STATE of Wisconsin, Plaintiff-Respondent,

v.

Dekoria MARKS, Defendant-Appellant.†

Court of Appeals

*No. 2010AP165–CR. Submitted on briefs November 2, 2010.
—Decided November 23, 2010.*

2010 WI App 172

(Also reported in 794 N.W.2d 547.)

† Petition for Review.

693

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Joel A. Mogren* of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *J.B. Van Hollen*, attorney general and *James M. Freimuth*, assistant attorney general.

Before Fine, Kessler and Brennan, JJ.

¶ 1. FINE, J. Dekoria Marks appeals the judgment entered on a jury verdict finding her guilty of attempted second-degree intentional homicide, *see* WIS. STAT. §§ 940.05(1)(a) & 939.32, and from the order denying her motion for postconviction relief.[1] She claims that: (1) her trial lawyer gave her constitutionally deficient representation; (2) the trial court erred when it refused to let the jury hear the unredacted version of what she told a Milwaukee police detective; and (3) she is entitled

---

[1] The Honorable Jeffrey A. Conen presided over the trial. The Honorable Jeffrey A. Wagner denied Dekoria Marks's motion for postconviction relief.

to a new trial under Wis. Stat. § 752.35 (interest of justice). We disagree and affirm.

## I.

¶ 2. The jury found Marks guilty of stabbing her on-again and off-again boyfriend, Edward Davis, during an argument they had on an early January 2008 morning. Neither Marks nor Davis testified at the trial, and the parties agreed that what Davis told others could be admitted. The jury heard the case mainly through the testimony of Marks's brother, Gregory Marks, and his ex-girlfriend, Svetylana Walls, as well as the testimony of Randall Chicks, a Milwaukee police detective.

¶ 3. According to Walls and Gregory Marks, they were in a bedroom of a house owned by the Marks's grandfather, when Davis came out of an adjacent room in which Davis and Dekoria Marks were arguing. Davis said that Dekoria Marks had stabbed him. Dekoria Marks also came out of the room and, according to Walls, said " 'I'm tired of you putting your damn hands on me. Stop calling me a bitch. I'm tired of all your shit.' " Gregory Marks told the jury that Davis did not say who had stabbed him, but merely that he "got cut." He also said that he did not remember earlier telling Detective Chicks that Davis accused Dekoria Marks of stabbing him.

¶ 4. Both Walls and Gregory Marks testified that Davis left the house that night before he told Walls and Gregory Marks that he was stabbed, and that he left the house either once or many times to, as phrased by Walls, "score drugs." Gregory Marks also told the jury that Davis, whom he described as "a chronic crack user," was in trouble with some drug dealers, having "stole

700

eight ounces of crack from a drug dealer and a Rolex."[2] Gregory Marks also indicated that, as an apparent result, someone threw a Molotov cocktail at his grandfather's house.

¶ 5. Once Gregory Marks saw that Davis was hurt, he called 911, and then both he and Walls hurried out of the house in order to avoid the police. The police arrived quickly, however, and they were ushered back into the house. Detective Chicks later interviewed both Walls and Gregory Marks separately in Chicks's squad car, and, later, after she was arrested, Dekoria Marks.

¶ 6. According to Detective Chicks, Walls told him that Davis and Dekoria Marks were "arguing loud" in the other room and that she heard Davis call Dekoria Marks "a bitch." Later, Davis came out of the room and said, according to Detective Chicks's recitation of what Walls told him, "you stabbed me or she stabbed me." At which point, as related to the jury by Detective Chicks, Walls told him that Dekoria Marks said "something like that's what you get; I told you about putting your hands on me, words similar to that."

¶ 7. Detective Chicks also told the jury that Gregory Marks had described the incident as follows:

> They continued to arguing, and Edward Davis — he heard his voice yelling she stabbed me or you stabbed me, and Edward walks out of the room. He's bleeding.
>
> Dekoria walked out behind him, and he sees that she's holding a knife in her hand; and he asked Dekoria what did — either — either called her by name or called her girl, said what did you do; and she responded to him

---

[2] Gregory Marks later told the jury: "The word on the street is that Ed [Davis] stole six ounces [of crack cocaine] from a crack dealer."

by saying there you go — taking sides again; and she said she told him that she stabbed him because he was hitting her.

¶ 8. As noted, Detective Chicks also interviewed Dekoria Marks once she was in custody. Audio of the interview was recorded and was transferred to a CD and transcribed. Portions of the CD, as redacted by the trial court, were played for the jury concurrent with Detective Chicks's testimony. According to Detective Chicks's testimony, Dekoria Marks said that Davis had slapped her once and she picked up the knife. On cross-examination, Detective Chicks said that Dekoria Marks told him that drug dealers were after Davis because he stole from them and that they might kill him. She also told Detective Chicks that Davis "had a problem cornering her when they used to fight" and that she was defending herself when she stabbed him. The redacted transcript of the interview that the jury heard gives more detail:

DETECTIVE: So what exactly did he, you said he slapped you?

MS. MARKS: Yeah.

DETECTIVE: Where?

MS. MARKS: Right here on my face.

DETECTIVE: Okay. Why did he do that?

MS. MARKS: Uh, he wants to be, you know, beat me, and been drinking, and I'm telling him it's time to just lay down.

DETECTIVE: Okay.

MS. MARKS: He wants to go over there.

702

DETECTIVE: And so, after he slapped you, what did you do to him?

MS. MARKS: I ended up grabbing a knife. Tried to tell myself, because he had a, a problem cornering me. When we used to fight before. He got a problem cornering me and I refuse to let him corner me and I just seen the knife over there, and I grabbed the knife and, defended myself.

DETECTIVE: How did you defend yourself?

MS. MARKS: How?

DETECTIVE: Yeah, what did, what specifically did you do?

MS. MARKS: I stabbed him.

DETECTIVE: Okay. How many times?

MS. MARKS: I don't know. I was just, I don't know how many times. And then I had, my brother [Gregory Marks] called me, and stuff, because he was like, why are you stabbing me. And my brother said, what is you doing? And I said, y'all don't know what he had did to me in that room behind closed door.

DETECTIVE: How many times did he slap you?

MS. MARKS: He slapped me that one time, it hurt. He got a big hand. He's a big person.

DETECTIVE: When you sl-, when you uh, stabbed him, was he, was he facing you or was he facing away from you?

MS. MARKS: He was facing away from me, because he was like this, and I was over here. He turned around, you know, yeah like that, and I just looked around like this, and that's when I grabbed it, and I just did it like that. Because I didn't know if he was going to come back or not, on the reflex to do it again.

703

Earlier, Walls had testified that Davis was "beating on" Dekoria Marks "lots of times" and that he "gets aggressive with her" when they argue. According to what Detective Chicks told Dekoria Marks during the in-custody interview, Davis had seven stab wounds.

¶ 9. The jury also heard from a police officer who rode in the ambulance with Davis as he was taken to a hospital. According to the officer, Davis told him that on the night of the incident someone had hit him a couple of times to the upper back area and that he then ran home.

## II.

¶ 10. As we have seen, Dekoria Marks claims that: (1) her trial lawyer gave her constitutionally deficient representation; (2) the trial court erred when it refused to let the jury hear the unredacted version of what she told Detective Chicks; and (3) she is entitled to a new trial under Wis. Stat. § 752.35. We address each of these contentions in turn.

### A. *Alleged ineffective trial representation.*

¶ 11. Dekoria Marks argues that her trial lawyer gave her constitutionally deficient representation in four respects, and contends that the circuit court should have granted her an evidentiary hearing. Before we get to her arguments, we restate the applicable standards.

¶ 12. To establish ineffective assistance of counsel, a defendant must show: (1) deficient representation; and (2) prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To prove deficient representation, a defendant must point to specific acts or omissions by the lawyer that are "outside the wide range of professionally

competent assistance." *Id.*, 466 U.S. at 690. To prove prejudice, a defendant must demonstrate that the lawyer's errors were so serious that the defendant was deprived of a fair trial and a reliable outcome. *Id.*, 466 U.S. at 687. Thus, in order to succeed on the prejudice aspect of the Strickland analysis, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*, 466 U.S. at 694. As *State v. Smith*, 207 Wis. 2d 258, 276, 558 N.W.2d 379, 386 (1997), tells us, this "is not an outcome-determinative test." Rather, "the touchstone of the prejudice component is 'whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair.' " *Ibid.* (citations and quoted source omitted).

¶ 13. Further, courts need not address both aspects of the Strickland test if the defendant does not make a sufficient showing on either one. *See Strickland*, 466 U.S. at 697. Finally, our review of an ineffective-assistance-of-counsel claim presents mixed questions of law and fact. *See State v. Johnson*, 153 Wis. 2d 121, 127, 449 N.W.2d 845, 848 (1990). A circuit court's findings of fact will not be disturbed unless they are clearly erroneous. *Ibid.* Its legal conclusions whether the lawyer's performance was deficient and, if so, prejudicial, are questions of law that we review *de novo*. *Id.*, 153 Wis. 2d at 128, 449 N.W.2d at 848. A defendant is entitled to an evidentiary hearing on his or her contentions that a lawyer was constitutionally ineffective if the defendant " 'alleges sufficient material facts that, if true, would entitle the defendant to relief.' " *State v. Love*, 2005 WI 116, ¶ 26, 284 Wis. 2d 111, 123, 700 N.W.2d 62, 68

(quoted source omitted). Thus, if the motion does not raise facts sufficient to entitle the movant to relief, or presents only conclusory allegations, or if the record conclusively demonstrates that the defendant is not entitled to relief, the circuit court has the discretion to grant or deny a hearing. *Ibid.* Whether the Record " 'conclusively demonstrates that the defendant is not entitled to relief' " is a legal issue that we review *de novo. See ibid.* (quoted source omitted).

 1. *Inconsistent defenses.*

¶ 14. Dekoria Marks's first contention is that her lawyer was constitutionally ineffective because he gave the jury two inconsistent theories: (1) that she stabbed Davis in self-defense, and (2) that Davis was stabbed by unknown angry drug dealers when he was out of the house that morning. In essence, Dekoria Marks argues that her trial lawyer's strategy was fatally flawed because despite the broad berth to which we give a lawyers' strategic decisions under the ineffective-assistance-of-counsel standards, *see State v. Westmoreland*, 2008 WI App 15, ¶ 20, 307 Wis. 2d 429, 439, 744 N.W.2d 919, 924 ("[S]trategic decisions by a lawyer are virtually invulnerable to second-guessing."); *State v. Elm*, 201 Wis. 2d 452, 464–465, 549 N.W.2d 471, 476 (Ct. App. 1996) ("A strategic trial decision rationally based on the facts and the law will not support a claim of ineffective assistance of counsel."), it was not within the realm of what *Strickland* calls the "wide range of professionally competent assistance," *Strickland*, 466 U.S. at 690. We disagree.

■
¶ 15. First, "it is not uncommon for lawyers to argue inconsistent defenses." *Westmoreland*, 2008 WI App 15, ¶ 21, 307 Wis. 2d at 440, 744 N.W.2d at 925. *See*

*also State v. McDonald,* 144 Wis. 2d 531, 533, 424 N.W.2d 411, 412 (1988) (Defendant "entered pleas of not guilty and not guilty by reason of mental disease or defect," contending that he did not kill the victim but was not responsible if he did.); *State v. Nelis,* 2007 WI 58, ¶ 20, 300 Wis. 2d 415, 424, 733 N.W.2d 619, 623 ("Nelis argued at trial that the evidence did not show that he and Diane S. had sexual intercourse on the night at issue. He further argued that, even if they did have sexual intercourse that night, it was consensual."); *Brown v. Dixon,* 891 F.2d 490, 494–495 (4th Cir. 1989) (Inconsistent defenses "that Brown either did not commit the murders or did so while drunk" was not ineffective assistance of counsel.).

¶ 16. Second, given Davis's assertion to the police officer who rode with him to the hospital that he was "hit in the back" by attackers when he was outside the house, coupled with the evidence that he was at risk of being killed because he stole from drug dealers, the argument that he was stabbed by them might have persuaded one or more jurors that the State had not carried its beyond-a-reasonable-doubt burden despite: (1) what Dekoria Marks told Walls, her brother, and Detective Chicks, and (2) what her brother and Walls said that Davis said at the house. Simply put, in order to get *any* conviction, the State had to persuade *all* the jurors that Dekoria Marks did what it said she did.

¶ 17. In light of the not uncommon practice of lawyers to argue inconsistent theories, we cannot say that the decision of Dekoria Marks's trial lawyer to argue them here deprived her of the right to constitutionally effective assistance, irrespective of whether we or the trial court view that strategy as the best. As we

707

noted in *Westmoreland*, 2008 WI App 15, ¶ 21, 307 Wis. 2d at 440, 744 N.W.2d at 925: "As *Strickland* reminds us, there is a 'wide range of professionally competent assistance,' *id.*, 466 U.S. at 690, and the bar is not very high, *see Yarborough v. Gentry*, 540 U.S. 1, 11 (2003) (lawyer need not be a Clarence Darrow to survive an ineffectiveness contention)."

¶ 18. Further, although we do not have to look at the prejudice aspect of *Strickland* because Dekoria Marks's trial lawyer was within the "wide range" of professional practice when he asked the jury to choose either of two inconsistent defenses, Dekoria Marks has not shown that her trial lawyer's strategic decision to present the two defenses made the result of the trial unreliable. Dekoria Marks was charged with attempted first-degree intentional homicide. *See* Wis. Stat. §§ 940.01(1)(a) & 939.32. The trial court instructed the jury that it could return a guilty verdict on the lesser-included crime of attempted second-degree intentional homicide if it determined that Dekoria Marks believed that she had to act in self-defense but her belief was not reasonable.[3] As we have seen, the jury found her guilty of the lesser crime.

[3] As material, Wis. Stat. § 940.01 provides:

(1) Offenses. (a) Except as provided in sub. (2), whoever causes the death of another human being with intent to kill that person or another is guilty of a Class A felony.

. . .

(2) Mitigating circumstances. The following are affirmative defenses to prosecution under this section which mitigate the offense to 2nd-degree intentional homicide under s. 940.05:

. . .

## 2. *Evidence of Dekoria Marks's fear of Davis.*

¶ 19. Dekoria Marks's second claim that her trial lawyer gave her constitutionally deficient representation is that he did not file a motion under *McMorris v. State*, 58 Wis. 2d 144, 205 N.W.2d 559 (1973), which held:

> When the issue of self-defense is raised in a prosecu-
> tion for assault or homicide and there is a factual basis to
> support such defense, the defendant may, in support of
> the defense, establish what the defendant believed to be
> the turbulent and violent character of the victim by
> proving prior specific instances of violence *within his
> [the defendant's] knowledge at the time of the incident.*

*Id.*, 58 Wis. 2d at 152, 205 N.W.2d at 563 (emphasis added). *See also* WIS. STAT. RULE 904.05(2), referenced by *McMorris*, 58 Wis. 2d at 152, 205 N.W.2d at 563.[4] "As a general rule, *McMorris* evidence may not be used to support an inference about the victim's actual conduct during the incident." *State v. Head*, 2002 WI 99,

(b) *Unnecessary defensive force.* Death was caused because the actor believed he or she or another was in imminent danger of death or great bodily harm and that the force used was necessary to defend the endangered person, if either belief was unreasonable.

WISCONSIN STAT. § 940.05(1) provides, as material: "Whoever causes the death of another human being with intent to kill that person or another is guilty of a Class B felony if: (a) In prosecutions under s. 940.01, the state fails to prove beyond a reasonable doubt that the mitigating circumstances specified in s. 940.01(2) did not exist."

[4] WISCONSIN STAT. RULE 904.05(2) provides: "In cases in which character or a trait of character of a person is an essential element of a charge, claim, or defense, proof may also be made of specific instances of the person's conduct."

¶¶ 127–128, 255 Wis. 2d 194, 253, 648 N.W.2d 413, 441 (referencing Wis. Stat. Rule 904.04(2)[5]). Marks argues in her brief:

> Clearly, the worst that could have occurred is that [the] Trial Court could have denied the motion and [Dekoria] Marks' [*sic*] would have been in the same position of having to proceed with two theories of defense, or the best case scenario, the Trial Court could have granted the motion, and then [Dekoria] Marks' [*sic*] could have put forth a self-defense that had some teeth. In either scenario, there is no rationale [*sic*] reason for Trial Counsel to have not filed a *McMorris* motion relating to Davis' [*sic*] past violence against [Dekoria] Marks.

As we have seen, however, the jury heard Walls's testimony that Davis had previously been rough with Dekoria Marks in the past. Other than her assertions in the redacted parts of her in-custody interview with Detective Chicks that: (1) Davis had been "arrested" "[i]n the past," (2) there "was violence" between Davis and Dekoria Marks, and (3) she "shoved" Davis "several times" and her "whole back went through the wall with blood last year Christmas," Dekoria Marks does not tell us what *more* she would have presented at a *McMorris* hearing and *how* she would have presented it if her trial lawyer had requested one.[6] *See Head*, 2002 WI 99, ¶ 130, 255 Wis. 2d at 254, 648 N.W.2d at 442 (offer of proof must be sufficient). Further, Dekoria Marks does

---

[5] Wisconsin Stat. Rule 904.04(2) provides:

[E]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. This subsection does not exclude the evidence when offered for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

[6] We discuss the redactions below in part A.3.

not even allege in her appellate submissions that her reliance on self-defense (which the jury, as we have seen, accepted but found to be unreasonable) was based on her knowledge of Davis's alleged "violent character" as revealed by his interactions with others. These flaws are fatal to her argument. *See State v. Flynn*, 190 Wis. 2d 31, 48, 527 N.W.2d 343, 349–350 (Ct. App. 1994) (A defendant who alleges that his lawyer was ineffective because the lawyer was deficient in his or her representation must show what the lawyer should have done and how it would have accomplished the result the defendant now seeks.).

3. *Redacted audio and transcript of Detective Chicks's in-custody interview with Dekoria Marks.*

¶ 20. As we have seen, the jury heard a redacted version of Detective Chicks's in-custody interview of Dekoria Marks. Although it is the appellant's responsibility to ensure that the Record before us is complete, *see State Bank of Hartland v. Arndt*, 129 Wis. 2d 411, 423, 385 N.W.2d 219, 225 (Ct. App. 1986), neither the CD nor an unredacted transcript is in the Record. Dekoria Marks has submitted, however, a copy of the redacted transcript that was received into evidence and given to the jury.

¶ 21. Dekoria Marks claims that her trial lawyer was ineffective because he did not seek to have the redacted parts admitted under Wis. Stat. Rule 901.07, the so-called "rule of completeness."[7] Parts of a non-testifying defendant's out-of-court statement are admis-

---

[7] Wisconsin Stat. Rule 901.07 reads: "When a writing or recorded statement or part thereof is introduced by a party, an

sible under this rule if necessary to "correct[] a distorted impression" of parts of the out-of-court statement offered by the State, despite the fact that if otherwise offered by the defendant they would be hearsay. *State v. Anderson,* 230 Wis. 2d 121, 143–144, 600 N.W.2d 913, 924–925 (Ct. App. 1999). Whether to receive an out-of-court statement under RULE 901.07 is within the trial court's discretion. *Anderson,* 230 Wis. 2d at 143–144, 600 N.W.2d at 924–925. In the ineffective-assistance-of-counsel context, we, per force, do not have a trial-court ruling, and, thus, we review *de novo* whether the defendant was prejudiced. *See Johnson,* 153 Wis. 2d at 128, 449 N.W.2d at 848.

¶ 22. Dekoria Marks's trial lawyer explained to the trial court those parts of the redacted transcript that he wanted included. He did not, however, reference WIS. STAT. RULE 901.07. For the purposes of our analysis of the prejudice aspect of *Strickland,* we assume (without deciding) that not doing so was deficient advocacy. In the following, we have bolded those parts of the redacted transcript that the jury received that Dekoria Marks contends should have been included (we give the context of the redactions in non-bolded type):[8]

*First excerpt:*

DETECTIVE: How long have you known Edward?

---

adverse party may require the party at that time to introduce any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it."

[8] The redactions objected to by Dekoria Marks were put on the Record in an oral presentation by her trial lawyer. Where there are non-material diversions from what he read of the redacted transcript and that transcript, we adopt the transcript's rendering.

MS. MARKS: All my life.

DETECTIVE: How long have you been dating him?

MS. MARKS: About four years.

DETECTIVE: Four years? Okay. **Has there been any violence between the two of you?**

**MS. MARKS: Yes.**

**DETECTIVE: In the past, has he been arrested or have you before been arrested?**

**MS. MARKS: He have.**

DETECTIVE: Okay. So, how is it that you were together with your ex-boyfriend [Davis] in your room tonight? That was your bedroom, right?

MS. MARKS: No.

DETECTIVE: No? Whose room is that?

MS. MARKS: That's his father's house. I was there visiting. My brother just moved in over there. In a situation that he had caused himself to be in. Um. Edward had did something that he has no business doing.

DETECTIVE: What's that?

MS. MARKS: He had peoples after him trying to kill him because he had end up stealing some drugs and some money. [Her answer continues and is not relevant to this opinion.]

*Second excerpt:*

MS. MARKS: And I just told him that he need to lay down. Don't talk loud, kept disturbing my brother and his girlfriend, kept walking out of the room, back and forth and stuff. And he slapped me, so I took offensive, you know protecting myself **due to the facts, how he did me before, several**

713

**times like I shoved him. My whole back went through the wall with the blood last year Christmas.**

DETECTIVE: Okay.

MS. MARKS: And he hit me. I just, what am I supposed to do? I know I'm not taking it no more. He end up being sneaking in and out of the house. You know he ain't supposed to be around. Because they going to kill him.

*Third excerpt:*

DETECTIVE: And so, after he slapped you, what did you do to him?

MS. MARKS: I ended up grabbing a knife. Tried to tell myself, because he had a, a problem cornering me.[9] When we used to fight before. He got a problem cornering me and I refuse to let him corner me and I just seen the knife over there, and I grabbed the knife and, defended myself.

DETECTIVE: How did you defend yourself?[10]

MS. MARKS: How?[11]

---

[9] The transcript given to the jury has: "MS. MARKS: I ended up grabbing a knife. Tried to tell myself, because he had a, a problem cornering me." Dekoria Marks's trial lawyer read it as (omitted words indicated by strikeout; added words by bolding): MS. MARKS: I ended up grabbing a knife **trying to defend** ~~Tried to tell~~ myself, because he had a, a problem cornering me." It is not clear from the Record or the parties' briefs whether the change from "tried to tell myself" to "trying to defend myself" was an actual redaction or a faulty transcription or a misspeaking by Dekoria Marks's trial lawyer. We give Dekoria Marks the benefit of the doubt, however, and assume that it was a redaction.

[10] Dekoria Marks's trial lawyer read it as: "Detective: So you defended yourself?"

[11] Dekoria Marks's trial lawyer read it as: "Ms. Marks: Yeah."

714

> DETECTIVE: Yeah, what did, what specifically did you do?
>
> MS. MARKS: I stabbed him.
>
> DETECTIVE: Okay. How many times?
>
> MS. MARKS: I don't know. I was just, I don't know how many times. And then I had, my brother [Gregory Marks] called me, and stuff, because he was like, why are you stabbing me. And my brother said, what is you doing? And I said, y'all don't know what he had did to me in that room behind closed door.

Given what the jury had already heard about Dekoria Marks's tumultuous relationship with Davis, Dekoria Marks has not established *Strickland* prejudice—that is, she has not shown that using WIS. STAT. RULE 901.07's rule-of-completeness was necessary to "correct[] a distorted impression" created by the redacted version. *See Anderson*, 230 Wis. 2d at 144, 600 N.W.2d at 925.

4. *Failure to object and move for a mistrial because of alleged prosecutorial misconduct.*

██ ██

¶ 23. Dekoria Marks claims that her trial lawyer was ineffective for not objecting to what she argues was misconduct by the prosecutor and for not seeking a mistrial. The claims are wholly without merit.

(a) During the trial, the prosecutor gave to Detective Chicks a copy of the redacted transcript and asked whether it was "an accurate depiction — or an accurate reflection of the statement by Mrs. [*sic*] Dekoria Marks?" Detective Chicks responded "yes." As we have seen, the redactions did not make the transcript that was received into evidence not "an accurate depiction —

715

or an accurate reflection" of the whole of Dekoria Marks's interview with Detective Chicks; even with the redactions, the transcript accurately reflected the tenor of what she told him.

(b) Later, after an audio excerpt was played for the jury, the prosecutor asked Detective Chicks whether the transcript "reflects exactly how that conversation went." Dekoria Marks does not show how the transcript did not "exactly" reflect what the jury heard in that excerpt.

¶ 24. There was no prosecutorial misconduct to which to object.

■

¶ 25. Further, although Dekoria Marks's main appellate brief does not reveal this, the trial court told the jury that the audio and the transcript had been redacted: "With regard to the defendant's statement, I've ordered that certain portions of some of the defendant's statement to be — to the police officer to be deleted, You're not to speculate about what the deletions may be or why I ordered them deleted."[12] Both lawyers agreed that the instruction was "sufficient." Additionally, the transcript received into evidence has asterisks at the place of the deletions, except in connection with the ambiguity noted in footnotes 9 through 11 of this opinion.

---

[12] We caution Dekoria Marks's appellate lawyer, Joel A. Mogren, Esq., that SCR 20:3.3 "requires candor toward tribunals," *see Wisconsin Natural Gas Co. v. Gabe's Constr. Co., Inc.*, 220 Wis. 2d 14, 19 n.3, 582 N.W.2d 118, 120 n.3 (Ct. App. 1998), and that he was obligated to disclose in his main brief that the trial court told the jury that Dekoria Marks's interview with Detective Chicks was redacted.

■

(c) Dekoria Marks claims on appeal that the following excerpts from the prosecutor's closing argument were also misconduct:[13]

*First excerpt:*

If she had thought about it, she may have come to her senses and realized that stabbing somebody seven times in the back and in the neck in response to being slapped once is not a reasonable response. That's not a rational reaction.

*Second excerpt:*

In Domestic Violence Court, each crime is dealt with separately. In Domestic Violence Court, you deal with one aspect that has been presented here.

And, in this Domestic Violence Court, this case is not titled Edward Davis versus Dekoria Marks. This case is titled State of Wisconsin versus Dekoria Marks.

That's how the law approaches crime. State of Wisconsin prosecutes. That's how Detective Chicks approaches crime. It's consistent.

Follow Detective Chicks' [*sic*] example. The evidence proves beyond a reasonable doubt that Dekoria Marks tried to kill her ex-boyfriend. She had the intent to kill.

*Third excerpt:*

If she was in danger — if Edward Davis was walking away from her, Edward

---

[13] We only address the matters for which Dekoria Marks gives Record references. *See Grothe v. Valley Coatings, Inc.*, 2000 WI App 240, ¶ 6, 239 Wis. 2d 406, 411, 620 N.W.2d 463, 465 (We will not consider arguments without appropriate references to the Record.).

Davis slapped her and then walked away, he was going out of that room, where was the danger?

The threat was over. The threat was over. There is no need to stab him, maybe she could pick up the knife, maybe she could harm [*sic*—"arm"?] herself with it in case he did turn around. He didn't turn around. Remember, he didn't turn around. He had his back to her. She got him in the back as he is leaving. There was no threat anymore.

*Fourth excerpt:*

[Dekoria Marks's lawyer] wants you to believe that Dekoria Marks was being beaten that night. She made the statement, "I was stabbed because he beat me."

"Well, what exactly did he do?"

"Well, he slapped me."

"How many times?"

"Just that one time. Just that one time. So I stabbed him because he slapped me that one time. I stabbed him seven times including in the neck and along the spine because he slapped me one time."

Now, we heard [Dekoria Marks's lawyer] say, "How many times does it take for a woman to be beaten before it's okay to stab somebody?

Well, if a man slaps his girlfriend one time, that is one time too many.

These were fair comments on the evidence that the jury heard, *see State v. Amundson,* 69 Wis. 2d 554, 572, 230 N.W.2d 775, 785 (1975), and any objections would have been frivolous.

¶ 26. In sum, the Record shows conclusively that Dekoria Marks's contentions that her trial lawyer was constitutionally ineffective are without merit. Thus, the circuit court did not erroneously exercise its discretion in not holding an evidentiary hearing. *See Love*, 2005 WI 116, ¶ 26, 284 Wis. 2d at 123, 700 N.W.2d at 68.

B. *Alleged trial-court error in not letting the jury hear the unredacted version of Detective Chicks's custodial interview of Dekoria Marks.*

¶ 27. As we have seen, Dekoria Marks complains that certain matters should not have been redacted from her custodial interview with Detective Chicks. Assuming but not deciding that the trial court should not have redacted the interview, under the applicable factors any error was harmless beyond a reasonable doubt, given: (1) the evidence of Davis's interactions with Dekoria Marks that the jury *did* hear; (2) the strength of the evidence against Dekoria Marks, *and* (3) the fact that the jury accepted her lawyer's contention that she stabbed Davis in what she believed was self-defense, although that belief was unreasonable. *See State v. Mayo*, 2007 WI 78, ¶ 48, 301 Wis. 2d 642, 669, 734 N.W.2d 115, 128 (discussing factors that may be considered in determining whether any error was harmless beyond a reasonable doubt).

C. *Discretionary reversal.*

¶ 28. Dekoria Marks asks us to exercise our discretion pursuant to Wis. Stat. § 752.35, under which we may order a new trial if it appears from the Record that: (1) "the real controversy has not been fully tried" or; (2) "it is probable that justice has for any reason

miscarried." *Vollmer v. Luety*, 156 Wis. 2d 1, 16, 456 N.W.2d 797, 804 (1990).[14] She merely repeats, however, contentions that we have already rejected. Her claim that she is entitled to a new trial under § 752.35 is without merit. *See State v. Arredondo*, 2004 WI App 7, ¶ 56, 269 Wis. 2d 369, 405, 674 N.W.2d 647, 663–664 (Ct. App. 2003).

*By the Court.*—Judgment and order affirmed.

---

[14] WIS. STAT. § 752.35 provides:

In an appeal to the court of appeals, if it appears from the record that the real controversy has not been fully tried, or that it is probable that justice has for any reason miscarried, the court may reverse the judgment or order appealed from, regardless of whether the proper motion or objection appears in the record and may direct the entry of the proper judgment or remit the case to the trial court for entry of the proper judgment or for a new trial, and direct the making of such amendments in the pleadings and the adoption of such procedure in that court, not inconsistent with statutes or rules, as are necessary to accomplish the ends of justice.