COURT OF APPEALS
DECISION
DATED AND FILED

February 19, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP1059-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2022CF79

IN COURT OF APPEALS
DISTRICT II

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

ROBERT L. GLOVER,

DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Waukesha County: J. ARTHUR MELVIN, III, Judge. *Affirmed.*

Before Gundrum, P.J., Grogan and Lazar, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Robert L. Glover appeals a judgment of conviction for recklessly causing great bodily harm to a child and felony bail jumping. He argues the circuit court erroneously exercised its discretion by overruling a double hearsay objection to a witness's testimony about incriminating statements Glover made to a co-defendant about the abuse. Glover also argues the court erred by denying his mistrial motion, in which Glover asserted unfair prejudice stemming from testimony that the child's mother had been convicted by a different jury of failing to protect the child from abuse.

¶2 Glover's hearsay arguments are doomed by his failure to adequately develop arguments before the circuit court and the absence in the appellate record of a transcript of a necessary ruling. Throughout the lower court proceedings, the State argued that a previous judge had already rejected Glover's double hearsay argument. Glover never argued that this representation was incorrect, and the court regarded the matter as having been decided. Though Glover challenges the merits of the double hearsay ruling, he has not included a transcript in the appellate record that would allow us to review the substantive basis for the previous judge's ruling. Because we assume the missing material supports the court's determination, we conclude Glover has not sufficiently demonstrated that the court erroneously exercised its discretion when it admitted the challenged testimony.

¶3 Glover's challenge to the circuit court's denial of his mistrial motion fares no better. Even assuming the testimony regarding the mother's conviction should not have been admitted, the court reasonably concluded the testimony had a limited prejudicial effect on Glover's case. Additionally, the court expressly contemplated that a special jury instruction might be sufficient to ameliorate any prejudicial effects of the testimony, but the defense did not request it. The court

ultimately gave a standard instruction that informed the jury it could use the witness's conviction only to evaluate the witness's truthfulness, not for any other purpose. For those reasons, we affirm.

## BACKGROUND

¶4 On July 11, 2018, eight-month-old Kevin[1] was brought by his mother, Melisha Thompson, to the Children's Wisconsin emergency department. Kevin had severe facial bruising, what appeared to be fingernail gouges to his neck, and healing fractures to his wrist and ribs. Based upon the nature and location of the injuries, Kevin's treatment team concluded his injuries were likely caused by abuse.

¶5 Thompson told police and Kevin's treatment providers that only she and Glover had been caring for Kevin for the past few weeks, and that the bruising occurred the day prior. Thompson worked during the day and Glover would watch Kevin. She further stated she first noticed the bruising when she returned from work on July 10, and it had not been present when she left for work. After some effort, police were able to interview Glover, who confirmed that only he and Thompson had provided care for Kevin in the preceding days.

¶6 Glover was charged with child abuse in Waukesha County Circuit Court case No. 2018CF1772. Thompson had been charged with failing to prevent child abuse and with child neglect in Waukesha County Circuit Court case No. 2018CF1771, and the cases were scheduled to be tried together. Both matters

---

[1] We use pseudonyms to refer to the victims. *See* WIS. STAT. RULE 809.86 (2021-22). All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

were pending before the Honorable Paul Bugenhagen, Jr., who set a February 23, 2021 trial date. Glover did not appear at a jury status hearing and a bench warrant issued for his arrest. Thompson's matter was then severed from Glover's, and she was convicted at a jury trial in August 2021.

¶7 Meanwhile, a Waukesha detective had been trying to contact Dale Bradby, who had been disclosed as a defense witness. On February 3, 2021, the detective spoke to Valerie, the mother of Bradby's child. Valerie told the detective that Bradby had told her that Glover made incriminating statements about the abuse. According to Bradby, as relayed to the detective by Valerie, Glover had said that he got in a fight with Thompson before she went to work. Kevin was crying, Glover "couldn't shut him up so he got frustrated, and at one point threw him to the ground, and then at one point possibly dropped him and he thought that he may have blacked out during this." Valerie told the detective she would be willing to testify to this information.

¶8 Later, Valerie encountered Glover, confronted him about "beat[ing] kids," and told him she was going to be a witness against him. Valerie testified Glover "just smil[ed] like it was funny." On February 9, Glover and Bradby "jumped" Valerie and punched, kicked and stomped on her while telling her she would "learn to mind [her] fucking business." Valerie contacted the police following the assault.

¶9 Following the attack, prosecutors commenced two new cases against Glover and Bradby. Glover and Bradby were both charged with witness intimidation, with an additional charge of felony bail jumping against Glover. The joined cases were assigned to Judge Bugenhagen, who considered a motion to dismiss and a motion to sever the co-defendants. Judge Bugenhagen denied the

motion to dismiss, ordered the cases joined with the 2018CF1772 child abuse case against Glover, and denied the motion to sever the charges against the co-defendants. Those cases were ultimately dismissed due to the unavailability of the treating pediatrician.

¶10    The State refiled the charges in the present case, which was assigned to the Honorable J. Arthur Melvin, III. At the preliminary hearing, the State responded to a defense venue challenge by arguing that the matter had been previously litigated before Judge Bugenhagen. Likewise, after Bradby's counsel expressed an intent to file a motion to sever the charges against the co-defendants, the prosecutor remarked that the severance issue had been previously litigated and that the State would file a motion regarding issue preclusion.

¶11    It is unclear if Bradby ever filed a motion to sever.[2] However, several days after the preliminary hearing, the State filed a motion seeking to give preclusive effect to any issues decided in the prior cases, along with a copy of its response to the motion to sever in the prior cases. The State also filed a motion seeking permission to use at trial Valerie's statements to the detective in the event the defendants' wrongdoing caused her not to appear. The matter was quickly scheduled for trial given the amount of time the charges had been outstanding.

¶12    About two months later, the circuit court held a final pretrial hearing with the parties and their attorneys. Bradby stated that the only remaining motion was, from his perspective, the State's motion for forfeiture by wrongdoing. Bradby's counsel confirmed that the court had addressed all other issues. The

---

[2] The appellate record does not contain any such motion, nor does it include a ruling by the circuit court in this case on such a motion.

court decided to admit Valerie's statements in the event she did not appear for trial, and the parties confirmed they had no other issues to discuss.

¶13    The trial commenced the following day.  Valerie appeared under subpoena and testified for the State.  Glover interposed a hearsay objection when the prosecutor asked Valerie what Bradby had told her about Glover being on the run.  The prosecutor responded that the "levels of hearsay" issue was previously litigated before Judge Bugenhagen, and she referred the court to her forfeiture by wrongdoing motion containing the following footnote:

> Judge Bugenhagen already ruled in the previously issued files regarding these same charges that the layer of hearsay for what Glover told Bradby and what Bradby told [Valerie] are admissible.  Both statements are statements of a party opponent pursuant to [WIS. STAT. §] 908.01(4)(b), both are also … admissible against each defendant as statements of a co-conspirator (908.01(4)(b)5[.]) and a statement against interest ([WIS. STAT. § ]908.45(4)).  This ruling was made in conjunction with the motion to sever the charges against Bradby and Glover, and an oral ruling was entered on Aug. 30, 2021.  The State already re-filed in this case the State's brief in regards to the motion to sever and the various hearsay exceptions involved.

To further buttress the State's representation, the State's response to the motion to sever (filed before Judge Bugenhagen and re-filed in the present case) included a detailed discussion of the State's position that the statements were not hearsay.

¶14    Defense counsel did not dispute that the hearsay matter had been previously litigated or attempt to materially rebut the State's rationale for admissibility.  Instead, Glover's attorney emphasized that he had not been on the case at the time any hearsay issues had been decided.

¶15 The circuit court overruled the hearsay objections and permitted Valerie to testify about what Bradby had told her.[3] The court noted that the hearsay issue "was part of those original set of motions that I dealt with basically on week one of the case being in this court." It relied on the State's representation that the matter had previously been addressed, observing, "It's stuff that's been litigated, it's stuff that I made a ruling on, stuff that Judge Bugenhagen's made a ruling on. It's all in the record. I'm not going to rehash it here today in the middle of a trial."

¶16 The defense called Thompson as a witness. Thompson denied causing Kevin's injuries and would not say whether she believed Glover caused them. She was cross-examined using Facebook messages between her and Glover, which appeared to implicate Glover in the abuse. The prosecutor established that after police discovered the Facebook messages, Thompson was charged with failure to protect Kevin from abuse and neglect. And in the final two questions of cross-examination, the prosecutor established that Thompson had been convicted of those offenses:

> Q And as this jury has to consider your bias or motive in your testimony, you've now been convicted of having a role in [Kevin]'s injuries, right?
>
> A Yes.
>
> Q Specifically convicted of the failure to protect from physical abuse and neglect?
>
> A Yes.

---

[3] Valerie's trial testimony was somewhat muted compared to what she told the investigating detective. At trial, Valerie stated that Bradby told her Glover said he had "blacked out and he may have beat the baby but he don't remember."

¶17    Defense counsel did not contemporaneously object to the questions regarding Thompson's convictions. Rather, he requested a side bar immediately after the questioning concluded, during which he asserted that the prosecutor's questions were impermissible and stated that he "may move for a mistrial." Later, after the jury was excused, defense counsel formally moved for a mistrial, asserting the prosecutor had violated WIS. STAT. § 906.09. The circuit court indicated it viewed the testimony as relevant and permissible but it invited the parties to further brief the matter.

¶18    The circuit court revisited the matter the next day, emphasizing that the convictions were permitted into evidence only because they involved "the same fact scenario, the same injuries, the same child abuse allegations." Shifting to the question of whether a mistrial was appropriate, the court agreed with the State that the questions were not highly prejudicial and that a jury would not be inclined to conclude it had to find Glover guilty because of what another jury had found in relation to Thompson.

¶19    The circuit court also raised the possibility of a less severe remedy than mistrial, such as a jury instruction. This prompted the prosecutor to suggest a modified form of WIS JI—CRIMINAL 247 (2000), with an admonition that the fact that a witness was found guilty of related crimes was immaterial to the defendant's guilt.[4] Despite the court giving the parties an opportunity to request such an instruction, no one did. The jury was, however, instructed that evidence that a witness has been convicted of crimes bore only on the witness's character for

---

[4] The form jury instruction states that the jury is to render a verdict only as to the defendant and is not to give any consideration to the fact that one or more other possible defendants are not being tried.

truthfulness and could not be used for any other purpose. The jury, so instructed, concluded Glover was guilty of the child abuse and bail-jumping offenses, but it acquitted him of witness intimidation. Glover now appeals.

## DISCUSSION

¶20     Glover raises two issues on appeal. He first argues that the circuit court erroneously exercised its discretion by admitting double hearsay testimony over his objection, namely Valerie's testimony about what Bradby had said Glover told him. Second, Glover asserts the court erred by denying his motion for a mistrial following Thompson's testimony about her convictions.[5]

¶21     We review both issues for an erroneous exercise of discretion. *State v. Hunt*, 2014 WI 102, ¶20, 360 Wis. 2d 576, 851 N.W.2d 434 (admission of evidence); *State v. Debrow*, 2023 WI 54, ¶15, 408 Wis. 2d 178, 992 N.W.2d 114 (motion for a mistrial). Generally, this court will affirm a discretionary decision as long as the circuit court examined the relevant facts, applied a proper legal standard, and used a demonstrated rational process to reach a reasonable conclusion. *State v. Dorsey*, 2018 WI 10, ¶37, 379 Wis. 2d 386, 906 N.W.2d 158.

---

[5] The State argues Glover has forfeited his challenge to Thompson's testimony given his failure to object at the inception of the questioning about the charges against her. While we are skeptical of this ambitious application of the forfeiture doctrine, we do conclude Glover has forfeited his argument that the circuit court erroneously exercised its discretion when admitting Thompson's testimony about her convictions. Glover did not interpose a contemporaneous objection to the two questions about her convictions, instead waiting until after Thompson's answers to request a sidebar, and even then he did not seek to strike those answers. As a result, we address the issue only as it relates to Glover's subsequent motion for a mistrial.

> *I.*     *Glover has failed to demonstrate that the circuit court erroneously exercised its discretion by admitting Valerie's alleged double hearsay testimony after accepting the State's representation that the matter had been decided by a previous judge.*

¶22     As described above, Glover's cases had a convoluted procedural history. After the charges were re-filed in the present case, the State consistently asserted that many matters Glover and Bradby wished to raise had been decided by Judge Bugenhagen. In particular, the State maintained that the testimony Glover now challenges as impermissible double hearsay was deemed admissible by Judge Bugenhagen when considering the motion to sever the charges against Glover and Bradby.

¶23     Glover has never challenged the State's representation that the double hearsay matter was previously decided. His argument proceeds from a different premise: that the circuit court erroneously believed that *it*—not a prior judge—had already ruled on the hearsay matter. The argument continues that if the court had considered the merits of Glover's hearsay objection, it would have been required to exclude Valerie's testimony as impermissible double hearsay.

¶24     In so arguing, Glover slices the appellate record a bit too thinly. Based on the trial transcript, it is apparent the circuit court was loathe to revisit a matter that it regarded as having been previously litigated by a different judge. The court referred to the hearsay matter as "stuff that was litigated before," and if there was any ambiguity about that, the court then explicitly referenced Judge Bugenhagen's ruling. Considered in their totality, the court's comments do not suggest it mistakenly believed it had already ruled on the merits of Glover's hearsay objection.

¶25    The circuit court's reliance on the ruling of a prior judge complicates our review of Glover's appeal. Glover asserts that the court's hearsay determination was manifestly incorrect on its merits, but those merits were considered by a different judge. Neither party has directed us to any document in the appellate record that contains Judge Bugenhagen's reasoning for concluding Valerie's testimony was admissible, and Glover's reply brief acknowledges that no such document exists in this case. This gap in the record is problematic because we typically look to a circuit court's on-the-record explanation when determining whether it properly exercised its discretion. *See **Hartung v. Hartung***, 102 Wis. 2d 58, 67, 306 N.W.2d 16 (1981).

¶26    Glover places the blame for this omission squarely on the State. As the proponent of the evidence, the State surely had the burden of demonstrating the admissibility of Valerie's testimony. *See **State v. Payano***, 2009 WI 86, ¶68 n.14, 320 Wis. 2d 348, 768 N.W.2d 832. But that demonstration apparently occurred in the prior case. Glover responds that the State should have to prove it: the prosecutor should have "filed a transcript or a copy of Judge Bugenhagen's supposed hearsay ruling."

¶27    Glover, however, provides no authority for the proposition that the State was required to make such a filing. And several considerations require us to reject Glover's implied argument that the circuit court erroneously exercised its discretion by taking the State's word for it. The State early on raised the matter of issue preclusion and provided considerable detail about the prior hearsay ruling, including the date of the oral pronouncement and the basis for the State's assertion that Valerie's testimony was not hearsay. There appears to have been no substantive response from the defense until the trial date. Even then, the defense

response was: "If [J]udge Bugenhagen said [so in] the prior [case], I wasn't involved."

¶28 If Glover wanted this court to review the merits of the hearsay issue, it was his obligation to provide us with the necessary tools. The appellant must ensure that the appellate record before us is sufficient to conduct a meaningful review. *See State v. Marks*, 2010 WI App 172, ¶20, 330 Wis. 2d 693, 794 N.W.2d 547. When the circuit court has relied on a prior judge's admissibility ruling, we cannot fulfill our error-correcting function in the absence of a transcript or other memorialization of the prior judge's decision. We would be guessing at why the court reached the admissibility determination it did.

¶29 Accordingly, we conclude the state of the appellate record prevents us from reaching the merits of the hearsay issue Glover raises concerning the admissibility of Valerie's testimony. "[W]hen an appellate record is incomplete in connection with an issue raised by the appellant, we must assume that the missing material supports the trial court's ruling." *Fiumefreddo v. McLean*, 174 Wis. 2d 10, 27, 496 N.W.2d 226 (Ct. App. 1993). We therefore affirm.

> II. *The circuit court did not erroneously exercise its discretion when it denied Glover's mistrial motion based on questioning about Thompson's convictions relating to the abuse.*

¶30 As the circuit court recognized, a mistrial is an extreme remedy. "When faced with a motion for mistrial, 'the circuit court must decide, in light of the entire facts and circumstances, whether … the claimed error is sufficiently prejudicial to warrant a mistrial.'" *Debrow*, 408 Wis. 2d 178, ¶15 (quoting *State v. Ford*, 2007 WI 138, ¶29, 306 Wis. 2d 1, 742 N.W.2d 61). In *Debrow*, the supreme court assessed whether the circuit court had demonstrated an appropriate process of reasoning, including by permitting the parties to make a full argument

about possible prejudice and by considering whether alternative remedies short of a mistrial would be sufficient. *See id.*, ¶¶16-18.

¶31 The nature of the questioning regarding Thompson's convictions informs our conclusion that the circuit court did not erroneously exercise its discretion when it denied the mistrial motion. Thompson was asked only whether she had been "convicted of having a role" in causing Kevin's injuries and the identity of the specific crimes.[6] Contrary to the representation in Glover's brief-in-chief, Thompson's testimony did not establish that "the jury found that Glover abused Kevin, and that Thompson failed to protect him from Glover's abuse." Thompson never articulated a jury finding about the identity of the abuser; in fact, she was a defense witness and was adamant that she had never witnessed Glover abusing Kevin. Glover considerably overstates the potential prejudicial effect of the testimony.

¶32 The prosecutor suggested, and the circuit court echoed, that any prejudice might be best addressed through a jury instruction. The State suggested a modified version of WIS JI—CRIMINAL 247 (2000), which spurred the court to consider the jury instructions immediately after the discussion of the mistrial motion. Despite the court explicitly providing an opportunity for the defense to seek such an instruction, the defense did not request it. Even so, the jury was given a standard instruction that a witness's conviction could be used only for the purpose of evaluating the witness's credibility. This instruction significantly

---

[6] The preceding questions were intended to elicit testimony that Glover and Thompson had been scheduled for trial together, but that Glover failed to appear and a warrant had issued for his arrest.

reduced the possibility that the jury drew an impermissible conclusion that it had to convict Glover because a previous jury convicted Thompson.

¶33    On the whole, the circuit court's consideration of the mistrial motion reflects a reasonable deliberation based upon the applicable legal standards and facts of record. Although the court also clearly believed the testimony was admissible, its determination that mistrial was too extreme a remedy is not clearly erroneous.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5 (2021-22).