STATE of Wisconsin, Plaintiff-Respondent,

v.

Duane E. ELM, Defendant-Appellant.

Court of Appeals

*No. 94–0930–CR. Submitted on briefs January 23, 1996.—Decided April 2, 1996.*

(Also reported in 549 N.W.2d 471.)

453

On behalf of the defendant-appellant, the cause was submitted on the brief of *Edward J. Salzsieder* of *Salzsieder Law Offices*, Oshkosh.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle,* attorney general, and *Diane M. Nicks,* assistant attorney general.

Before Cane, P.J., LaRocque and Myse, JJ.

CANE, P.J.   Duane Elm appeals his judgment of conviction after a jury trial for first-degree sexual assault of a child as a repeater, and an order denying postconviction relief. Elm argues his trial counsel's failure to object to the examining physician's testimony that the cause of the child's abrasions was molestation and to the prosecutor's discussion of this testimony during closing argument constituted ineffective assistance of counsel. Additionally, Elm argues trial counsel was ineffective for not eliciting more direct testimony from Elm regarding factual discrepancies in the child's story and for not calling character witnesses on Elm's behalf. Because we conclude the physician's statement was admissible opinion testimony and Elm was not denied effective assistance of counsel, we affirm the judgment of conviction and the order denying postconviction relief.

Elm was charged with two counts of first-degree sexual assault of a child who has not attained the age of thirteen years, § 948.02(1), STATS., after his fiance's

456

niece, Ryanne C., told police that Elm had made her touch Elm's penis and that Elm had touched her vagina. The jury found Elm guilty of having sexual contact with Ryanne by touching her vagina and not guilty of sexual contact for causing Ryanne to touch Elm's penis.

During the trial, Dr. Richard Erdman testified that he was on duty in the emergency room at the hospital when Ryanne and her mother arrived to have Ryanne examined. Erdman testified that first he spoke with Ryanne and her mother about Ryanne's allegations of sexual abuse. Erdman said Ryanne told him someone had been "touching my boobs" and "putting his fingers inside of me." Erdman next conducted a physical examination of Ryanne, including examination of her vagina. Erdman testified that he observed two areas of erythema, or abrasions, on Ryanne's vagina. At trial, the prosecutor asked Erdman:

> Doctor, based upon the history you took in this case, the findings from the examination that you conducted, your training and your experiences as an emergency room physician, do you have an opinion to a reasonable degree of medical probability as to the cause of the erythema that you noted in your report on [Ryanne]?

Erdman responded, "My opinion is that she was molested."

The first issue on appeal is whether Erdman's statement was inadmissible. Elm argues the statement was inadmissible because it conveyed to the jury Erdman's personal belief that the child was telling the truth. We conclude Erdman's statement was admissible.

## ADMISSION OF THE DOCTOR'S OPINION

In Wisconsin, a witness may not testify "that another mentally and physically competent witness is telling the truth." *State v. Jensen,* 147 Wis. 2d 240, 249, 432 N.W.2d 913, 917 (1988) (quoting *State v. Haseltine,* 120 Wis. 2d 92, 96, 352 N.W.2d 673, 676 (Ct. App. 1984)). Under this analysis, it has been held improper for a police officer to testify that the complaining witness was being "totally truthful" with the officer, *see State v. Romero,* 147 Wis. 2d 264, 277, 432 N.W.2d 899, 904 (1988), and for a psychiatrist to give his opinion that there "was no doubt whatsoever" that the child was an incest victim. *See Haseltine,* 120 Wis. 2d at 95-96, 352 N.W.2d at 675-76.

In contrast to the testimony in *Romero* and *Haseltine,* Erdman did not testify that Ryanne was telling the truth. Erdman's statement did not explicitly address truth or veracity in any way. Nonetheless, Elm argues the only interpretation of Erdman's testimony is that Erdman conveyed his personal belief that Ryanne was telling the truth. We disagree. Erdman's testimony was not his personal opinion about Ryanne's statements. Instead, Erdman gave his medical diagnosis of the cause of the erythema he observed, based on his physical examination of the child, his discussions with the child and her mother, and his training and experience as an emergency room physician. His medical opinion was that the cause of Ryanne's erythema was molestation.

The facts of this case are distinguishable from *Haseltine,* where the psychiatrist based his conclusion that the child was an incest victim solely on interviews with the child. Here, Erdman conducted a physical examination of Ryanne and testified about his physical observations and the cause of the child's injuries.

458

Moreover, Erdman's testimony did not purport to identify the individual who may have molested Ryanne or to confirm that the child was telling the truth about the ultimate issue in the case, whether Elm had assaulted her. In contrast, the psychiatrist in *Haseltine*, by testifying the child had been a victim of incest, not only implied that the victim was truthful, but also that a relative had sexually assaulted the child.

Under Wisconsin law, the fact that Erdman's testimony embraces an ultimate issue of fact, whether sexual contact with a child under the age of thirteen occurred, does not make the testimony inadmissible. *See Rabata v. Dohner*, 45 Wis. 2d 111, 124, 172 N.W.2d 409, 415 (1969) (there is no objection in Wisconsin to an expert giving his opinion on an ultimate fact); § 907.04, STATS. ("Testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact.").[1]

Our conclusion that Erdman's statement is admissible is consistent with decisions reached by courts in other jurisdictions. In *State v. Laird*, 732 P.2d 417 (Mont. 1987), the court held that the examining physician could testify that it was 99.99% likely that the alleged victim had been sexually assaulted. *Laird* observed:

> It is clear that [the doctor] was not testifying about [the child's] veracity. Instead, [the doctor] was asked to give his diagnosis of [the child] based upon

---

[1] Elm has not argued that Erdman's testimony was inadmissible for any reason except that it constituted Erdman's personal opinion that the child was telling the truth.

his experience as a pediatric specialist. The physician can testify as to his clinical impression and give an opinion based upon his experience and first hand observation. [The doctor] said he was 99.99 percent certain [the child] had been sexually assaulted. He did not say he was certain she was telling the truth. He also did not make any conclusions regarding the ultimate issue, i.e., whether the defendant raped [the child].

*Id.* at 420 (citation omitted); *see also State v. Dickens,* 647 P.2d 338, 342-43 (Mont. 1982) (physician could testify his overall impression was that adult woman was raped); *State v. Boston,* 545 N.E.2d 1220, 1239 (Ohio 1989) (doctor could testify that in her opinion, child had been sexually abused, because expert's testimony will assist trier of fact in understanding whether abuse has in fact occurred). Likewise, in this case, the physician offered his medical diagnosis that molestation was the cause of the erythema, based on his medical experience, personal observations and discussions with the child. He did not say Ryanne was telling the truth and did not even mention Elm, much less conclude Elm was the perpetrator.

Our conclusion is also consistent with Wisconsin law on expert testimony. For example, in *Rabata,* our supreme court considered a negligence case involving a head-on collision where both the plaintiff and the defendant maintained the accident occurred in his own traffic lane. *Id.* at 115-16, 172 N.W.2d at 410-11. The plaintiff's expert accident reconstructionist testified that the accident had occurred in the plaintiff's lane. *Id.* at 116, 172 N.W.2d at 411. On appeal, the defendant argued the plaintiff's expert should not have been allowed to testify on an ultimate issue of fact

without a hypothetical question. *Id.* at 122, 172 N.W.2d at 414. *Rabata* held:

> It is well-established law in Wisconsin that an expert may give an opinion in answer to a direct, as contrasted to, a hypothetical question, where the facts upon which he relies are either undisputed or are the result of firsthand knowledge.
>
> . . . .
>
> It is apparent that a qualified expert may, in a proper case in response to a direct question, give his opinion on [an] ultimate fact exactly as he can when the hypothetical question is posed.

*Id.* at 122, 126, 172 N.W.2d at 414, 416.

■

For these reasons, we conclude the trial court properly admitted Erdman's testimony that the cause of Ryanne's erythema was molestation. Next, we turn to Elm's claim that he was denied effective assistance of counsel.

## INEFFECTIVE ASSISTANCE OF COUNSEL CLAIM

■

Ineffective assistance of counsel claims are reviewed under the two-pronged test set out by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). *State v. Pitsch*, 124 Wis. 2d 628, 633, 369 N.W.2d 711, 714 (1985). The first prong requires that the defendant show counsel's performance was deficient; that is, counsel made such serious errors that counsel is no longer functioning as the "counsel" guaranteed to the defendant by the Sixth Amendment. *Strickland*, 466 U.S. at 687. The second prong requires that the defendant show that the

deficient performance prejudiced his or her defense. *Id.* To show prejudice, the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694. Not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceedings. *Pitsch,* 124 Wis. 2d at 641, 369 N.W.2d at 718 (citing *Strickland,* 466 U.S. at 693).

■■

Whether Elm received ineffective assistance of counsel presents a mixed question of fact and law. *See Strickland,* 466 U.S. at 698. We will only reverse a trial court's findings of fact if they are "clearly erroneous." *Pitsch,* 124 Wis. 2d at 634, 369 N.W.2d at 714. Questions of whether counsel's performance was deficient and whether it prejudiced the defendant's defense are questions of law that we review de novo. *State v. Moffett,* 147 Wis. 2d 343, 353, 433 N.W.2d 572, 575 (1989). If the defendant fails to adequately show one prong of the *Strickland* test, we need not address the second. *Strickland,* 466 U.S. at 697.

■■

On appeal, Elm argues he was denied effective assistance of counsel for four reasons. We begin by analyzing the first two reasons: (1) that trial counsel, Michael Hanna, did not object to Erdman's testimony that Ryanne's erythema was caused by molestation; and (2) that trial counsel did not object to the prosecutor's statements on closing that referenced Erdman's testimony. Because we have concluded Erdman's statement was properly admitted, there was no need for trial counsel to object. Therefore, Elm has not satisfied the first prong of the *Strickland* test that

requires Elm to show trial counsel's performance was deficient. *See id.* at 687.

The next alleged error committed by trial counsel is that he failed to elicit more direct testimony from Elm to discredit the factual discrepancies presented by Ryanne's testimony. Specifically, Elm argues trial counsel should have inquired about the feasibility of events that the child alleged led to Elm making her touch his penis. Because Elm was acquitted of the charge that involved contact with his penis, Elm has not demonstrated that he was prejudiced by a lack of further questioning about the incident. Therefore, Elm has not satisfied the second prong of the *Strickland* test that requires Elm to show that trial counsel's deficient performance prejudiced his defense. *See id.* at 687.

■

Also, Elm identifies specific discrepancies in the child's testimony and Elm's testimony, apparently attempting to argue that because the jury believed the child's version of events instead of Elm's version, trial counsel must have been ineffective. Elm failed to raise these specific factual discrepancies in his motion for postconviction relief and at the postconviction motion hearing. As a result, Hanna was not questioned about these issues, and the trial court made no specific findings on them. We conclude Elm has waived these arguments.

Even if the error was not waived, we are confident, as was the trial court, that trial counsel's performance was not deficient. Elm argues Ryanne's testimony was confusing and unclear and that Elm's testimony disputed Ryanne's testimony as to certain physical facts, such as those concerning when and where Ryanne received a hickey and who caused it. Elm

appears to argue that because there was conflicting testimony and the jury believed Ryanne, his trial counsel's performance was deficient. We disagree. First, the very fact that trial counsel elicited testimony that contradicted Ryanne's story, potentially weakening the State's case, shows his performance was proficient, not deficient. Additionally, Elm has not identified any additional evidence trial counsel could have presented. Therefore, Elm has not satisfied the first prong of the *Strickland* test: showing his trial counsel's performance was deficient. *See id.* at 687.

Elm's final argument is that trial counsel was ineffective for failing to call character witnesses to testify on Elm's behalf. At the postconviction motion hearing, Elm stated he wanted the witnesses to testify about his "honesty and other things." Elm has not identified these potential witnesses or specified how their testimony would affect his case. Additionally, at the postconviction hearing, Hanna testified he believes calling witnesses is a decision made within defense counsel's judgment. Hanna stated that there were a number of names Elm suggested to him and that the witnesses were interviewed. However, Hanna decided not to call them. He explained that, in general, he does not call witnesses if he does not think calling the witnesses will help achieve defense goals or if the testimony would be inadmissible as irrelevant.

An appellate court will not second-guess a trial attorney's "considered selection of trial tactics or the exercise of a professional judgment in the face of alternatives that have been weighed by trial counsel." *State v. Felton*, 110 Wis. 2d 485, 502, 329 N.W.2d 161, 169 (1983). A strategic trial decision rationally based on the facts and the law will not support a claim of

ineffective assistance of counsel. *See id.* at 501-02, 329 N.W.2d at 169. Trial counsel's performance was not deficient for not presenting evidence of Elm's good character.[2] Therefore, Elm has not satisfied the first prong of the *Strickland* test: showing his trial counsel's performance was deficient. *See Strickland*, 466 U.S. at 687.

In sum, we conclude there is no merit to Elm's argument that he was denied effective assistance of counsel. Instead, the record supports the trial court's comments on ineffective assistance: "The court is first going to find that there is no ineffective assistance of counsel. This was one of the best tried cases from a defense point. Mr. Elm was in my view very lucky to have Mr. Hanna representing him." Additionally, we conclude Erdman's opinion that the cause of Ryanne's erythema was molestation was properly admitted. Finally, we note that Elm in his conclusion asks that a new trial be granted in the interests of justice. We are not convinced that there has been a probable miscarriage of justice, that Elm should not have been found guilty or that a new trial would lead to a different result. *See State v. Johnson*, 135 Wis. 2d 453, 467, 400 N.W.2d 502, 508 (Ct. App. 1986). For the foregoing

---

[2] Furthermore, we note that Elm conceded at the postconviction hearing that he had agreed to "go with" his lawyer's advice about character witnesses.

Q  Do you recall whether or not Mr. Hanna did discuss with you that perhaps he interviewed some of the witnesses and thought that their testimony was either not relevant or not admissible and would not do you any good?

A  I remember something in that part where he said it probably wouldn't do me any good. I don't remember his exact words, but something to that effect, and I — I couldn't because he was my lawyer, so I go with him.

reasons, we affirm the judgment of conviction and the trial court's order denying postconviction relief.

*By the Court.*—Judgment and order affirmed.