PER CURIAM.
¶ 1 Donald Tappa appeals amended criminal judgments convicting him of arson, burglary, three counts of theft, and four counts of criminal damage to property, each as a repeat offender. Tappa also appeals an order denying his postconviction motion for a new trial. Tappa contends that the circuit court erred in admitting other acts evidence, and that his trial counsel provided ineffective assistance by failing to introduce certain rebuttal evidence and by failing to request a limiting jury instruction. Tappa also argues we should grant him a new trial in the interest of justice. We reject Tappa's arguments and affirm.
BACKGROUND
¶ 2 The State alleged that on the evening of December 24 or early morning hours of December 25, 2013, Tappa broke into the Log Jam Saloon in Oconto, where he forced open and took money from a safe, an automated teller machine (ATM), and a juke box before setting fire to the building. The evidence produced at a five-day trial included the following key points.
¶ 3 While on patrol shortly after 10:30 p.m. on the evening in question, Oconto police officer Erek Belongia saw through an alleyway a man with a backpack walking in an area where there had been a recent string of burglaries. Belongia drove around the area attempting to find the individual and identify him, but Belongia was unable to locate him.
¶ 4 As Belongia was searching for the man with the backpack, he observed Tappa sitting in his car in a parking lot near the Log Jam Saloon. Belongia drove his squad car alongside Tappa's vehicle and made contact with Tappa through the windows of both cars. Belongia noted that Tappa appeared nervous. Tappa told Belongia that he was there to pick up a woman named Ashley, whose last name Tappa did not know. During subsequent investigation, the only Ashley that Belongia could find who had been in the vicinity that evening was an Ashley Fuller. On the evening in question, Fuller had been bartending at another establishment near the Log Jam Saloon.
¶ 5 Belongia asked Tappa whether he had seen the person with the backpack, to which Tappa replied, "[I]t was that fucking [Michael] Holtger. He's a weasel." Tappa proceeded to provide Belongia with unsolicited information about burglaries and drug dealing that were occurring in the city. Tappa's identification of the man with the backpack was contradicted at trial by the testimony of Michael Holtger and his girlfriend, both of whom testified that Holtger was at home in bed on Christmas Eve and the early morning hours of Christmas Day.
¶ 6 At 11:38 p.m., about an hour after Belongia and Tappa spoke, a friend of Tappa's attempted to contact him by text message, asking how long Tappa was going to ignore her. Tappa turned his cell phone on at 11:58 p.m., and shortly thereafter replied, "LOL. I was fucking my life up. Getting in trouble but got away." Three minutes after Tappa's text, 911 dispatchers received the first report of a fire at the Log Jam Saloon.
¶ 7 Jeffrey Turecek owned and managed the Log Jam Saloon. Turecek went to the bar in response to a call informing him about the fire. Turecek saw Tappa near the scene, sitting in his car. When Turecek later went through the building with investigators, Turecek noticed that a floor mat and two bottles of alcohol had been moved and were lying together near what was identified as the fire's point of origin. Turecek discovered that $400 had been taken from a safe containing "start up" money used to provide change in the cash register. Another safe in the bar that did not contain any money had not been touched. Turecek testified that the fact that the safe containing no money had not been broken into led him to believe that the burglar must have had inside knowledge about where money was kept in the bar.
¶ 8 Melissa Lorang, an employee of the Log Jam Saloon, testified that she had spoken with Tappa about a month before the fire. Tappa asked Lorang about the money-handling procedures at the bar, such as where the cash was kept and whether the owner brought the money home at the end of the night. Lorang told Tappa about which of the two safes in the bar contained money and about measures the owner took to make it appear as though the gaming machines in the bar contained no money.
¶ 9 Mark Bickel testified that he encountered Tappa with other onlookers at the scene of the fire, and Bickel went for a ride with Tappa while the fire was still burning. During the ride, Tappa commented that he "was glad that Jeff was there and everybody else was there because it made sure that he didn't have nothing to do with it."
¶ 10 Later on Christmas Day, Tappa paid his cousin $1020 in cash for snowmobile parts. The bills were a mixture of denominations, mostly twenties. Tappa had been unemployed since April due to an injury, and his worker's compensation benefits had ended the first week of December. Records for the ATM at the Log Jam Saloon showed it contained $2840 at the time an error code occurred, consistent with the presumed time of the robbery.
¶ 11 Two days after the fire, Tappa discussed the fire with Ricky Lewis. According to Lewis, Tappa "[j]ust said [he] got cut or whatever and to hide DNA, lit it and left." Lewis offered this information to police in exchange for favorable treatment in an unrelated criminal case against him.
¶ 12 Police conducted a search of Tappa's garage and recovered a black backpack and a reciprocating saw. Investigators believed that the ATM inside the Log Jam Saloon was broken into with tools including a reciprocating saw and drill. According to expert testimony, yellow paint particles and metal shavings collected from the backpack in Tappa's garage were consistent with the paint particles and metal shavings collected from around the ATM in the bar.
¶ 13 Special Agent Kevin Heimerl of the Department of Justice Division of Criminal Investigation testified that a laptop computer had also been seized from Tappa. Heimerl agreed that the laptop did not contain any information linking Tappa to the burglary and arson, explaining that "the hard drive on the computer was reformatted. There was very little data on the computer."
¶ 14 Tappa moved for a mistrial based upon Heimerl's testimony about Tappa's computer. The circuit court determined that no evidence from the laptop could be introduced because the State had failed to turn over a report on the laptop during discovery. The circuit court denied the motion for a mistrial, but stated that it would entertain a request for a jury instruction "as to any inference that they may have received from hearing that the laptop" had been reformatted. Defense counsel never requested such an instruction.
¶ 15 Finally, based upon a successful pretrial motion in limine to admit other acts evidence, the State presented evidence that Tappa had previously burglarized several other businesses within a one-block radius of the Log Jam Saloon. In addition to their close physical proximity, all the burglaries involved probable entry through a first-floor window and thefts.
¶ 16 The jury returned guilty verdicts on all charges, and the circuit court entered judgment and sentenced Tappa. Tappa filed a postconviction motion seeking a new trial based upon the alleged erroneous admission of other acts evidence, the ineffective assistance of counsel, or in the interest of justice. The circuit court denied Tappa's postconviction motion following a hearing, and Tappa appeals.
DISCUSSION
A. Other acts evidence.
¶ 17 Tappa first argues testimony about his prior burglaries constituted impermissible other acts evidence. The other acts evidence was that Tappa burglarized a series of businesses in the same city block as the Log Jam Saloon in 2001, 2010, and 2013. According to CCAP, those burglaries led to charges, guilty pleas, and convictions in State of Wisconsin v. Donald L. Tappa , Oconto County case No. 2001CF29.
¶ 18 Evidence of "other crimes, wrongs, or acts is not admissible to prove the character of the victim to show that the person acted in conformity therewith," although such other acts evidence may still be used to show proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. WIS. STAT. § 904.04(2)(a) (2015-16).[1] Additionally, the evidence must also be relevant under WIS. STAT. §§ 904.01 and 904.02, in that it relates to a fact or proposition of consequence to the determination of the action, and its probative value must not be substantially outweighed by the danger of unfair prejudice or confusion of issues under WIS. STAT. § 904.03. State v. Sullivan , 216 Wis. 2d 768, 785-89, 576 N.W.2d 30 (1998).
¶ 19 We review the circuit court's admission of other acts evidence under the erroneous exercise of discretion standard. Id. at 780. A court properly exercises discretion when it considers the facts of record under the proper legal standard and reaches a rational conclusion. Id.
¶ 20 The circuit court issued a written memorandum addressing the issue of other acts evidence. The court first determined that the prior burglaries were admissible for the purpose of showing that Tappa had a plan of burglarizing buildings in a neighborhood with which Tappa was familiar. The court next determined that the prior burglaries were relevant and probative to show that Tappa had committed the instant burglary because of the similar manner of entry through a window as well as the proximity of the locations. Finally, the court determined that the probative value of the prior burglaries was not substantially outweighed by the danger of unfair prejudice because Tappa would have an opportunity to rebut the evidence and the court would be willing to provide a cautionary instruction to the jury-which the court in fact gave.
¶ 21 Tappa asserts his commission of the prior burglaries did not constitute a step in a "plan" for committing the current offenses; did not show that he was "preparing" to commit the present offenses; did not provide him with an "opportunity" to commit the present offenses; did not provide him with specific "knowledge" needed to commit the present offenses; did not show that he had the "intent" to commit the current offenses; and did not have any tendency to make it more probable that he committed the present offenses. He further contends that any probative value of the prior burglaries was substantially outweighed by the danger of unfair prejudice-that is, that the jury would conclude that he committed the current offenses because he was a bad individual. Each of these assertions is conclusory and undeveloped.
¶ 22 The State responds that the record fully supports the circuit court's decision. We agree. First, we note Tappa focuses too narrowly on whether the prior burglaries show that he had a plan to rob the Log Jam Saloon, rather than whether he had a more general plan to obtain money by robbing neighborhood businesses. Furthermore, Tappa's commission of the prior burglaries showed that he had the requisite knowledge and skills to commit the present offenses. Finally, the danger of unfair prejudice was reduced by the limiting instruction given by the circuit court. Because the circuit court rationally applied the correct standard of law to the facts of record, we conclude it acted within its discretion in admitting the other acts evidence.
B. Ineffective assistance of trial counsel.
¶ 23 Tappa next argues that his trial counsel provided ineffective assistance in two respects. First, counsel failed to introduce into evidence a bank statement that could have shown an alternate source for the cash that Tappa used to buy the snowmobile parts. Second, counsel failed to request a jury instruction advising the jury that they should not draw any negative inference from the fact that the hard drive on Tappa's laptop had been reformatted.
¶ 24 A claim of ineffective assistance of counsel has two parts: (1) deficient performance by counsel; and (2) prejudice resulting from that deficient performance. State v. Swinson , 2003 WI App 45, ¶ 58, 261 Wis. 2d 633, 660 N.W.2d 12. We need not address both components of the test if the defendant fails to make a sufficient showing on one of them. Id. Here, we conclude that Tappa's counsel's performance was not deficient.
¶ 25 To prove deficient performance, a defendant must overcome a strong presumption that counsel acted reasonably and within professional norms by showing that counsel made errors so serious as to essentially not be functioning as the counsel guaranteed to the defendant by the Sixth Amendment to the United States Constitution. Id. In evaluating counsel's conduct, we must be careful to avoid the "distorting effects of hindsight." State v. Thiel , 2003 WI 111, ¶ 19, 264 Wis. 2d 571, 665 N.W.2d 305 (citation omitted).
¶ 26 Trial counsel enjoys wide latitude in strategic and tactical decision-making. Cullin v. Pinholster , 563 U.S. 170, 195 (2011). A strategic trial decision rationally based on the facts and law will not support an ineffective assistance claim. State v. Elm , 201 Wis. 2d 452, 464-65, 549 N.W.2d 471 (Ct. App. 1996). A circuit court's finding that counsel's trial strategy was appropriate and reasonable "is virtually unassailable in an ineffective assistance of counsel analysis." State v. Maloney , 2004 WI App 141, ¶ 23, 275 Wis. 2d 557, 685 N.W.2d 620. "[S]econd-guessing strategic decisions in hindsight will generally not be a meritorious basis to find ineffective assistance of counsel." Gentry v. Sevier , 597 F.3d 838, 851 (7th Cir. 2010).
¶ 27 Claims of ineffective assistance of counsel present mixed questions of law and fact. Strickland v. Washington , 466 U.S. 668, 698 (1984). We will not set aside the circuit court's factual findings about what actions counsel took or the reasons for them unless they are clearly erroneous. State v. Pitsch , 124 Wis. 2d 628, 634, 369 N.W.2d 711 (1985). However, whether counsel's conduct violated the constitutional standard for effective assistance is ultimately a legal determination that this court decides independently. Id.
1. The bank account records.
¶ 28 Trial counsel testified at the Machner hearing[2] that he was in possession of Tappa's bank account records prior to trial and was aware that Tappa had withdrawn a substantial amount of money several days before the burglary and fire at the Log Jam Saloon. Counsel testified that he did not introduce the bank records because he did not view the fact that Tappa had bought snowmobile parts on Christmas Day as a substantial fact that needed to be addressed. Instead, counsel was more concerned with the physical evidence, the scientific testing, and Tappa's whereabouts on the night of the burglary and fire, and he focused his primary attention on those three issues.
¶ 29 This court will not second-guess an attorney's trial strategy unless it was irrational or based upon caprice rather than judgment. State v. Breitzman , 2017 WI 100, ¶ 75, 378 Wis. 2d 431, 904 N.W.2d 93. Here, we are satisfied that trial counsel's decision not to introduce Tappa's bank records and instead to concentrate on rebutting the most incriminating pieces of evidence against Tappa was a rational and deliberate choice. The other evidence included the reciprocating saw and paint fragments found in Tappa's garage, which directly linked him to the crime scene. In addition, Tappa had made explicit inquiries about where money was kept in the bar, and he failed to provide any convincing explanation for his presence near the bar on the night in question. Moreover, several of Tappa's own statements were incriminating, including texting one friend just minutes before the fire was reported that he had been "getting in trouble but got away," and telling another person that he had "lit it and left" to get rid of DNA evidence in the bar after he cut himself.
¶ 30 In comparison to the physical evidence recovered from Tappa's garage and his incriminating statements, Tappa's possession of a substantial amount of cash on the day after the robbery was a minor point because the cash itself was not directly linked to the burglary. Nor would Tappa's withdrawal of money from a bank account before the burglary in any way preclude Tappa's commission of the burglary. Furthermore, trial counsel's elicitation of testimony that Tappa often bought snowmobile parts with cash was a reasonable alternative way to deal with the issue of Tappa's possession of cash without introducing the bank statement. Tappa has not provided any authority requiring counsel to introduce all available evidence that might be favorable to the defense or precluding counsel from prioritizing which evidence to produce. Because we determine counsel's strategy of prioritizing the evidence against Tappa to have been reasonable, we conclude counsel did not perform deficiently.
2. Jury instruction concerning the computer.
¶ 31 Trial counsel testified that he did not request a jury instruction regarding the reformatting of the computer because he did not want to highlight any inference that might be drawn from the reformatting, or to give the jury cause to think about the computer. We note that the State's witness did not testify as to when the computer's hard drive was reformatted. Nor did the State argue that the hard drive was reformatted in order to delete any incriminating information about the burglary or fire. Rather, the State elicited the brief mention of the computer in a series of questions about items that turned out not to have any evidentiary value. In that context, instructing the jury that it should not draw any negative inferences from the fact that the computer's hard drive had been reformatted could well have done more harm than good. Thus, trial counsel had a reasonable strategy for not requesting the instruction and was not deficient in failing to do so.
C. New trial in the interest of justice.
¶ 32 Finally, Tappa argues that the combined effect of the circuit court's admission of other acts evidence and ineffective assistance of his counsel warrant this court granting him a new trial in the interest of justice. However, we have determined all of Tappa's arguments to be without merit. This court will not aggregate claims of non-error and award a defendant a new trial. State v. Hunt , 2014 WI 102, ¶ 55 n.15, 360 Wis. 2d 576, 851 N.W.2d 434. Combining meritless claims does not create a winning claim. Zero plus zero remains zero. Mentek v. State , 71 Wis. 2d 799, 809, 238 N.W.2d 752 (1976).
By the Court.- Judgments and order affirmed.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)5.

All references to the Wisconsin Statutes are to the 2015-16 version unless otherwise noted.

State v. Machner , 92 Wis. 2d 797, 804, 285 N.W.2d 905 (Ct. App. 1979).