**COURT OF APPEALS**
**DECISION**
**DATED AND FILED**

**December 27, 2019**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal Nos.**  **2018AP1593-CR**
**2018AP1594-CR**
**STATE OF WISCONSIN**

Cir. Ct. Nos. 2011CF3688
2011CF3947

**IN COURT OF APPEALS**
**DISTRICT I**

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

ANTONIO L. BELL,

DEFENDANT-APPELLANT.

APPEALS from judgments and an order of the circuit court for Milwaukee County:  DAVID L. BOROWSKI and CAROLINA STARK, Judges. *Order reversed and cause remanded with directions.*

Before Brash, P.J., Kessler and Fitzpatrick, JJ.

¶1  BRASH, P.J.  Antonio L. Bell appeals his judgments of conviction for second-degree sexual assault of a child and third-degree sexual assault, as well as the order denying his postconviction motions.[1]  The victims in this case are Bell's daughter, C.B., who was nine years old at the time the charges were filed, and his stepdaughter, S.E., who was fourteen.  Bell pled no contest to these charges but maintained his innocence, stating that he entered the pleas to spare his children from having to testify at a trial.

¶2  After the assaults were reported, both girls tested positive for a sexually-transmitted disease—chlamydia.  In his initial postconviction motion, Bell argued that his trial counsel was ineffective for failing to investigate S.E.'s boyfriend as a potential third-party perpetrator, because he was known to have tested positive for chlamydia, whereas there was no evidence that Bell ever had chlamydia.

¶3  In his supplemental postconviction motion, Bell argued the existence of newly discovered evidence relating to C.B.  Prior to Bell entering his pleas, C.B. had recanted her statement that Bell had assaulted her.  After he was sentenced, however, C.B. made a second, more detailed recantation:  not only did she again state that Bell had not assaulted her, she declared that the perpetrator was actually S.E.'s boyfriend, and that the boyfriend had encouraged her to blame Bell for the assault.

---

[1] The appellant filed two postconviction motions in this matter, which addressed different issues.  However, only the order relating to the second, supplemental postconviction motion is deemed to be a final order; the further proceedings held on that supplemental motion rendered the order from the initial motion nonfinal.  Additionally, while the appellant appeals both the judgments of conviction and the final order, we address only the order for the reasons set forth in this opinion.

¶4      The trial court denied both of Bell's postconviction motions without granting hearings.  It found that Bell had not demonstrated that he was prejudiced by trial counsel's failure to investigate S.E.'s boyfriend because the court did not believe it was a viable third-party defense.  The court also rejected Bell's newly discovered evidence claim, stating that C.B. had made her first recantation prior to Bell entering his pleas, and thus the second recantation did not constitute new evidence.

¶5      We conclude that Bell has demonstrated that he is entitled to an evidentiary hearing on his claims.  We therefore reverse and remand this matter for such a hearing before the trial court.

## BACKGROUND

¶6      The charges against Bell in these matters were both filed in August 2011.  Bell was charged first on August 8, 2011, with one count of first-degree sexual assault of a child under the age of twelve with regard to C.B.  C.B. reported that Bell had anal sex with her; she subsequently tested positive for rectal chlamydia.

¶7      A second complaint was filed against Bell on August 22, 2011, with regard to S.E.  S.E. reported that Bell had penis to vagina sexual intercourse with her in July 2011.  S.E. later tested positive for vaginal chlamydia.  S.E. further stated that when she was seven years old, Bell had touched her vagina over her clothing.  Bell was charged with one count of second-degree sexual assault of a child under the age of sixteen, and one count of sexual assault for sexual contact with a child under the age of thirteen.

¶8    Throughout the proceedings, there were numerous scheduling delays caused by both sides; additionally, Bell's original trial counsel withdrew from the case in September 2012. Furthermore, C.B. recanted her accusation against Bell in May 2012. C.B. was interviewed by an officer after her mother informed police that she thought C.B. might completely recant. C.B. told the officer that her previous statement that Bell had assaulted her was a lie and that her aunt had encouraged her to blame Bell.

¶9    Nevertheless, the matters were resolved by a plea agreement in April 2013. Bell pled no contest to amended charges of second-degree sexual assault of a child and third-degree sexual assault, stating that he had agreed to the plea so that the victims would not have to go through a trial.

¶10    The sentencing hearing was held in July 2013. A presentence investigation report (PSI) had been prepared in which Bell denied the allegations against him, stating that the children had been "put up to this," but again stating that he had taken the plea to spare them from having to testify. As a result of those statements, the trial court discussed with Bell whether he wanted to ask to be allowed to withdraw his pleas; however, Bell maintained that he did not want to withdraw his pleas and that he wanted to move forward with sentencing. The court imposed a global sentence of twelve years of initial confinement and eight years of extended supervision.

¶11    Bell filed a postconviction motion for both cases in May 2015 seeking an evidentiary hearing and the withdrawal of his pleas based on his claim that his trial counsel was ineffective for failing to "adequately investigate" S.E.'s

boyfriend, A.C.,[2] as the possible perpetrator of the assaults. The trial court denied this motion without a hearing in July 2015. The court opined that A.C.'s chlamydia diagnosis "was not determinative as to who sexually assaulted the victims." Thus, the court held that this third-party perpetrator evidence would not have satisfied the requirements of *State v. Denny*, 120 Wis. 2d 614, 357 N.W.2d 12 (Ct. App. 1984), and therefore a motion to admit this evidence would not have been successful.

¶12     Bell then filed separate appeals from that order denying his postconviction motion, with one of those being a no-merit appeal. However, upon review of the no-merit appeal by this court, potential issues were identified that related to both cases. We therefore granted postconviction counsel's motion to voluntarily dismiss the no-merit appeal and pursue a supplemental postconviction motion.

¶13     That supplemental postconviction motion was filed in November 2017. In this motion, Bell claimed the existence of newly discovered evidence—a second recantation by C.B., which named A.C. as the person who assaulted her. The trial court again denied the motion without a hearing, finding that C.B.'s second recantation was not "new" evidence, but rather was merely additional information that was not included in her original recantation, which Bell knew about prior to entering his pleas. Furthermore, the court pointed out that Bell at least suspected that A.C. may have been the perpetrator at the time he entered his

---

[2] S.E.'s boyfriend, whom she references using a nickname, was initially identified as P.M.; however, a subsequent police report identified him as A.C.

pleas, and thus was negligent for failing to seek more evidence relating to the boyfriend prior to entering his pleas.

¶14    This appeal follows.

## DISCUSSION

¶15    On appeal, we review Bell's postconviction motion—the initial motion and the supplemental motion, both of which request an evidentiary hearing on his claims, and ultimately seek the withdrawal of his pleas. A defendant seeking to withdraw his or her plea after sentencing "must prove, by clear and convincing evidence, that a refusal to allow withdrawal of the plea would result in 'manifest injustice.'" *State v. Brown*, 2006 WI 100, ¶18, 293 Wis. 2d 594, 716 N.W.2d 906 (citation omitted). The "mere assertion" of manifest injustice, however, "does not entitle a defendant to the granting of relief...." *State v. Allen*, 2004 WI 106, ¶14, 274 Wis. 2d 568, 682 N.W.2d 433 (citation and one set of quotation marks omitted).

¶16    Indeed, a defendant is not automatically entitled to an evidentiary hearing relating to his or her postconviction motion. *State v. Bentley*, 201 Wis. 2d 303, 309, 548 N.W.2d 50 (1996). Rather, the trial court is required to hold an evidentiary hearing only if the defendant has alleged "sufficient material facts that, if true, would entitle the defendant to relief." *Allen*, 274 Wis. 2d 568, ¶14. Whether a defendant has met this standard is a question of law that we review *de novo*. *Id.*, ¶9.

> I.    *Claim of Ineffective Assistance of Counsel for Failure to Investigate Possible Third-Party Perpetrator*

¶17    We first review Bell's claim that his trial counsel was ineffective for failing to adequately investigate A.C. as a potential third-party perpetrator. There was evidence in the record that A.C. had tested positive for chlamydia around the time that the assaults occurred. Although Bell's trial counsel advised the trial court that he was aware of this information and was investigating it further, he never filed a *Denny* motion seeking to admit any evidence relating to A.C.

¶18    Manifest injustice as it relates to plea withdrawal may be demonstrated by proving ineffective assistance of counsel. *State v. Taylor*, 2013 WI 34, ¶49, 347 Wis. 2d 30, 829 N.W.2d 482. To prove ineffective assistance of counsel, a defendant must show that his trial counsel's performance was deficient and that the deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The defendant "must prevail on both parts of the test to be afforded relief." *Allen*, 274 Wis. 2d 568, ¶26. We review *de novo* "'the legal questions of whether deficient performance has been established and whether it led to prejudice rising to a level undermining the reliability of the proceeding.'" *State v. Roberson*, 2006 WI 80, ¶24, 292 Wis. 2d 280, 717 N.W.2d 111 (citation omitted).

¶19    A claim of ineffective representation requires that a postconviction evidentiary hearing be held "to preserve the testimony of trial counsel." *State v. Machner*, 92 Wis. 2d 797, 804, 285 N.W.2d 905 (Ct. App. 1979). However, as noted above, the trial court need not grant an evidentiary hearing if the postconviction motion is insufficient. *Roberson*, 292 Wis. 2d 280, ¶43. To that end, the motion "must include facts that 'allow the reviewing court to

meaningfully assess [the defendant's] claim.'" *Allen*, 274 Wis. 2d 568, ¶21 (citation omitted; brackets in *Allen*). In other words, the motion must include a "factual basis" that supports the assertions in the motion. *Id.*

¶20    Bell's motion regarding this claim alleges the following facts relating to A.C.: he had sexual intercourse with S.E.; he was known to have tested positive for chlamydia; and C.B. was present in the house when A.C. and S.E. were having sex. The trial court held that trial counsel was not deficient for failing to file a *Denny* motion regarding this evidence because it would not have been successful. *See State v. Allen*, 2017 WI 7, ¶46, 373 Wis. 2d 98, 890 N.W.2d 245 ("It is well-established that trial counsel could not have been ineffective for failing to make meritless arguments.").

¶21    Defendants seeking to admit evidence regarding a third party must meet the requirements of the *Denny* test. Under the *Denny* test, the evidence sought to be admitted must show "a 'legitimate tendency' that the third person could have committed the crime." *Denny*, 120 Wis. 2d at 623 (citation omitted). To that end, the evidence must meet three prongs: that the third party had (1) motive; (2) opportunity; and (3) a direct connection to the crime charged. *Id.* at 624. Although we generally review evidentiary decisions of the trial court under the erroneous exercise of discretion standard, when the court's "denial of admission of the proffered evidence implicates a defendant's constitutional right to present a defense … the decision not to admit the evidence is a question of constitutional fact that this court reviews *de novo*." *State v. Wilson*, 2015 WI 48, ¶47, 362 Wis. 2d 193, 864 N.W.2d 52.

¶22    In this case, the trial court held that even if the evidence relating to A.C.'s chlamydia diagnosis had been proffered, it did not meet any of the three

prongs. We disagree. Both S.E. and C.B. tested positive for chlamydia, and the State conceded that it had no evidence that Bell had ever been diagnosed with chlamydia. S.E. admitted to having sexual relations with A.C. and further, statements by C.B. indicate that she was in the house during a time when S.E. and A.C. were together.

¶23 The trial court labeled this evidence a "red herring," noting that another plausible scenario is that Bell had chlamydia and gave it to S.E., who then gave it to A.C. However, that purported chain of events is not supported by the evidence that is in the record. Rather, the record indicates that there could be a direct connection of sexual contact between A.C. and both of the victims.

¶24 Additionally, the evidence also demonstrates that the motive and opportunity prongs were clearly met with regard to S.E.: she admitted to having sexual intercourse with A.C., which clearly provides opportunity as well as a general motive of sexual gratification. *See **State v. Vollbrecht***, 2012 WI App 90, ¶27, 344 Wis. 2d 69, 820 N.W.2d 443 (where the court found that evidence of a general motive is sufficient to prove this prong of the ***Denny*** test). This general motive can also be applied to C.B., and because C.B. was in the same house when A.C. and S.E. were together, there are facts alleged relating to the opportunity prong for C.B. as well. Furthermore, our supreme court has determined that the "strength and proof" of one of the prongs may "affect the evaluation of the other prongs." *See **State v. Wilson***, 2015 WI 48, ¶64, 362 Wis. 2d 193, 864 N.W.2d 52.

¶25 "To prove constitutional deficiency, the defendant must establish that counsel's conduct [fell] below an objective standard of reasonableness." ***State v. Love***, 2005 WI 116, ¶30, 284 Wis. 2d 111, 700 N.W.2d 62. Based on the evidence in the record along with the facts alleged in his postconviction motion,

filing a ***Denny*** motion with regard to A.C. would have been a reasonable defense strategy. However, because there was no evidentiary hearing held on this issue, at this juncture we have no way of knowing whether there was a satisfactory reason for trial counsel's failure to do so. *See **State v. Elm***, 201 Wis. 2d 452, 464-65, 549 N.W.2d 471 (Ct. App. 1996) ("A strategic trial decision rationally based on the facts and the law will not support a claim of ineffective assistance of counsel."). Therefore, we conclude that Bell has alleged sufficient facts to support his assertion that his trial counsel was deficient for not pursuing a ***Denny*** motion regarding this evidence. *See **Allen***, 274 Wis. 2d 568, ¶21.

¶26   With regard to the prejudice prong, a defendant must demonstrate "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." ***Love***, 284 Wis. 2d 111, ¶30 (citations and internal quotation marks omitted). The trial court found that Bell was aware of this evidence prior to entering his pleas, and thus even if trial counsel was deficient for not filing a ***Denny*** motion, he still opted to accept the plea offer. Therefore, the court held that Bell had alleged no facts to support his claim "that he would have proceeded to trial with this defense," which defeats the prejudice prong. *See **Hill v. Lockhart***, 474 U.S. 52, 59 (1985).

¶27   However, while the evidence relating to A.C. was known prior to Bell entering his pleas, the record indicates that it was never fully developed. At a pretrial hearing in January 2012, the admissibility of this evidence was discussed, and the trial court observed that it would "require a separate hearing." At that point, Bell was represented by his original trial counsel, who stated that he needed more time to "[flesh] this out."

10

¶28    After that, there were numerous delays in the proceedings, including the withdrawal of Bell's original counsel in September 2012; at that time, the trial court recognized that there were still a number of issues pending, including a potential *Denny* motion. Bell's subsequent trial counsel advised the court at a pretrial hearing in December 2012 that he was aware of this evidence and was investigating it further, but he never filed a *Denny* motion. In fact, it was postconviction counsel's investigator who first obtained a more definite, potentially admissible evidence relating to A.C.'s chlamydia diagnosis: testimony from A.C. regarding his relationship with S.E. and his chlamydia diagnosis, corroborated by police reports.

¶29    Both of the complaints filed in this matter noted that the victims had tested positive for chlamydia. Thus, this was clearly a material factor in the State's case; in fact, the State noted at the plea hearing that its strongest evidence in this case was the medical evidence, that is, the victims' chlamydia diagnoses. Accordingly, the facts Bell alleges regarding his trial counsel's deficiency in not pursuing evidence relating to an alternative source for the victims' sexually transmitted diseases also demonstrate that there is a reasonable probability that the result of the proceeding may have been different had this evidence been presented. *See Love*, 284 Wis. 2d 111, ¶30. Therefore, we conclude that Bell has alleged sufficient facts to support his assertion that he was prejudiced by trial counsel's failure to adequately investigate the evidence relating to A.C. prior to Bell entering his pleas. *See Allen*, 274 Wis. 2d 568, ¶21.

¶30    Because Bell has alleged "sufficient material facts that, if true, would entitle [him] to relief," the trial court was required to hold an evidentiary hearing on his claim of ineffective assistance of counsel for failing to follow

through on the evidence regarding A.C. *See id.*, ¶14. We therefore remand this matter to the trial court for an evidentiary hearing on this claim.[3]

## II. *Claim of Newly Discovered Evidence*

¶31 Bell also seeks to withdraw his pleas based on C.B.'s second recantation—where she named A.C. as the actual perpetrator—on the ground that this is newly discovered evidence. "Newly discovered evidence may be sufficient to establish that a manifest injustice has occurred" for a defendant seeking to withdraw a guilty plea. *State v. McCallum*, 208 Wis. 2d 463, 473, 561 N.W.2d 707 (1997). The withdrawal of a plea under the manifest injustice standard rests in the [trial] court's discretion," and we will uphold that determination as long as the court properly exercised its discretion. *Id.* However, "[a]n exercise of discretion based on an erroneous application of the law is an erroneous exercise of discretion." *Id.*

¶32 For a claim of newly discovered evidence to succeed, the defendant must first prove, by clear and convincing evidence, that: "(1) the evidence was discovered after conviction; (2) the defendant was not negligent in seeking evidence; (3) the evidence is material to an issue in the case; and (4) the evidence is not merely cumulative." *Id.* If these four criteria are met, the defendant must then demonstrate that "there is a reasonable probability that a jury, looking at both

---

[3] Additionally, in briefing this issue, the parties recognized that this evidence, as it relates to the sexual relations between S.E. and A.C., implicates the rape shield statute. *See* WIS. STAT. § 972.11(2)(b) (2017-18). The trial court did not conduct an analysis regarding whether the rape shield statute would bar admission of this evidence since it held that the evidence would not have been admissible under *Denny*. *See State v. Denny*, 120 Wis. 2d 614, 357 N.W.2d 12 (Ct. App. 1984). However, in remanding this matter for an evidentiary hearing, we note that this issue may eventually need to be addressed.

the accusation and the recantation, would have a reasonable doubt as to the defendant's guilt." ***State v. Kivioja***, 225 Wis. 2d 271, 285, 592 N.W.2d 220 (1999). Finally, if the newly discovered evidence is a witness's recantation, that recantation "must be corroborated by other newly discovered evidence." ***McCallum***, 208 Wis. 2d at 473-74.

¶33     The trial court denied Bell's supplemental postconviction motion regarding this claim on the ground that "the asserted 'new evidence' in C[.]B[.]'s second recantation is not new." C.B. had already recanted prior to Bell entering his pleas, stating that her prior statement that Bell had sexually assaulted her was a lie. The court characterized C.B.'s second recantation, made after Bell was sentenced—which named A.C. as the actual perpetrator—as "additional information" rather than new information.

¶34     We disagree. In reviewing Bell's motion in terms of whether he has alleged sufficient material facts that, if true, would entitle him to an evidentiary hearing, we conclude Bell has met his burden. *See **Allen***, 274 Wis. 2d 568, ¶14. The facts alleged regarding C.B.'s second recantation—made five years after her original recantation, and including new information that A.C. was the actual perpetrator and that he had encouraged her to blame Bell—meets the first, third, and fourth criteria of ***McCallum***. *See **id.***, 208 Wis. 2d at 473. Furthermore, given the alleged deficiency of trial counsel in investigating A.C. as a possible perpetrator, as discussed above, the facts alleged by Bell demonstrate that he was not negligent in seeking this evidence, thereby satisfying the second criterion. *See **id.***

¶35     The next requirement—whether a reasonable probability exists that a jury would have reasonable doubt as to Bell's guilt—rests on C.B.'s credibility.

*See id.* at 479-80. However, C.B.'s mother did not allow postconviction counsel's investigator to speak to C.B. directly regarding her second recantation; thus, Bell had to rely on the assertions of C.B.'s aunt to whom she made the second recantation for the allegations in his supplemental postconviction motion. Bell also points out that C.B.'s mother was the person who first brought to the police's attention the possibility of C.B. recanting, which led to C.B.'s first recantation when she was ten years old. While these facts require further exploration to determine whether Bell is entitled to withdraw his pleas, they sufficiently support the allegations of Bell's motion.

¶36　The same can be said of the requirement of corroborating evidence. This requirement is met if: "(1) there is a feasible motive for the initial false statement; and, (2) there are circumstantial guarantees of the trustworthiness of the recantation." *Id.* at 478. Bell asserts that a feasible motive for C.B.'s initial false statement was fear of A.C. While conceding that this is "somewhat speculative," Bell points out that victim's motives in *McCallum* "were unknown until she revealed them when she recanted" at a postconviction evidentiary hearing. *See id.* at 470-72, 478.

¶37　Furthermore, C.B.'s second recantation was made when she was fifteen years old—significantly older than when she accused Bell as a nine-year-old, and when she recanted the first time at ten years old—and is generally consistent with her first recantation. These facts as alleged provide a basis for ascertaining a circumstantial guarantee of the trustworthiness of the second recantation; they can then be further examined at an evidentiary hearing, where the trial court can then weigh the evidence presented and make credibility determinations. *See id.* at 478-80.

¶38    In sum, we conclude that Bell has alleged facts that are sufficient to warrant an evidentiary hearing on the claims he has raised.  We therefore remand this matter to the trial court for a hearing.  We do not address Bell's appeal of his judgments of conviction, as the issue of whether Bell is entitled to withdraw his pleas is to be determined by the trial court upon its review of the evidence presented at the hearing.  *See **Brown***, 293 Wis. 2d 594, ¶18.

*By the Court.*—Order reversed and cause remanded with directions.

Not recommended for publication in the official reports.