COURT OF APPEALS
DECISION
DATED AND FILED

December 29, 2020

Sheila T. Reiff
Clerk of Court of Appeals

NOTICE

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2019AP1716-CR**

Cir. Ct. No. **2016CF4647**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT I

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

  V.

VALENTE MARQUISE CAMPBELL,

    DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Milwaukee County: MARK A. SANDERS, Judge. *Affirmed*.

Before Brash, P.J., Donald and White, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Valente Marquise Campbell appeals a judgment of conviction, following a jury trial, of one count of first-degree sexual assault of a child, two counts of exposing a child to harmful material, and two counts of felony bail jumping. He also appeals from the order denying his postconviction motion for relief on the basis of ineffective assistance of counsel. Upon review, we affirm.

## BACKGROUND

¶2 Campbell was initially charged with first-degree sexual assault of a child under the age of thirteen. According to the criminal complaint, on or around September 16, 2016, Campbell picked up a twelve-year old Z.F. and took her to his apartment where they smoked marijuana and had sex. An amended information added two counts of exposing genitals to a child and two counts of felony bail jumping. The matter proceeded to trial where the jury deadlocked on the first-degree sexual assault charge, but convicted Campbell of the remaining charges. Campbell moved to vacate the verdicts; the State did not oppose the motion. The State then filed an amended information charging Campbell with one count of first-degree sexual assault of a child under the age of thirteen, two counts of exposing a child to harmful material, and two counts of felony bail jumping. The information alleged that the charged incidents occurred between September 5, 2016, and September 16, 2016.

¶3 Prior to trial, Campbell moved to obtain access to Z.F.'s medical records which showed that on September 20, 2016, after Z.F. reported the assault, Z.F. provided a urine sample. Specifically, Campbell argued that if the test results showed a negative presence for marijuana, it would negate Z.F.'s contention that she smoked marijuana with Campbell before allegedly having sex with him. The motion also alleged that the test results would confirm whether Z.F. had a sexually

2

transmitted disease. Ultimately, the State provided Campbell with the records, which showed that Z.F. tested negative for the presence of marijuana, but positive for chlamydia.

¶4 The matter proceeded to trial. As relevant to this appeal, during Z.F.'s testimony, trial counsel asked Z.F. if she took a urine test. The State asked for a sidebar, which occurred off the record. The trial court later discussed the sidebar on the record, stating that the parties discussed questioning Z.F. about the urine test. The defense told the trial court that Z.F.'s negative marijuana test result was relevant, but the State indicated that if the defense discussed the results of the marijuana test, the State would question Z.F. about the chlamydia test result. Noting that both tests results were relevant to both parties, the court stated that it would allow the parties to question Z.F. about the urine test. Neither party further questioned Z.F. about the urine test.

¶5 Ultimately, the jury found Campbell guilty as charged. The trial court imposed a twenty-six year sentence.

¶6 Campbell filed a postconviction motion for a new trial, arguing that trial counsel was ineffective for failing to introduce: (1) Z.F.'s negative marijuana test result; (2) Z.F.'s positive chlamydia test result; and (3) Campbell's own negative chlamydia test result. Alternatively, he argued that the real controversy was not fully tried and the court should grant a new trial in the interest of justice.

¶7 At a hearing on the motion, Campbell's trial counsel testified that he received Z.F.'s test results six days prior to the start of trial. Counsel testified that he did some independent online research and determined that based on when Z.F. provided a urine sample and the unknown exact date of the sexual assault, it "was inconclusive on whether urine ... would yield a positive result for THC after that

long." Counsel said that he did not consult with an expert on the issue because the trial was scheduled to start within a few days and Campbell did not want to seek an adjournment.

¶8    Trial counsel also testified that after he received Z.F.'s test results, Campbell informed him that he had tested negative for chlamydia. Counsel stated that he then discussed the possibility of seeking an adjournment so that counsel could obtain Campbell's medical records, but Campbell did not want the trial adjourned.

¶9    Counsel also testified that when the matter proceeded to trial, he thought Z.F.'s negative marijuana test was "of enough importance to start asking her about it," but following the sidebar discussion opted not to pursue that line of questioning because the State asserted that it would introduce evidence of Z.F.'s positive chlamydia result if counsel introduced the negative marijuana results. Without Campbell's medical records to prove his negative chlamydia test, counsel determined that "the relatively minimal benefits of having the negative THC result on the record were significantly outweighed by the entry of the positive STD test." Counsel stated that his "biggest concern was without any explanation or indication that Mr. Campbell … would not also test positive for the same, I was concerned that a jury would believe that he was the source of that STD."

¶10    The postconviction court ultimately denied Campbell's motion, finding that counsel did not perform deficiently by failing to confer with an expert to determine "whether that drug test would have been relevant ... or useful to the defense," and that counsel was not deficient for failing to obtain and introduce Campbell's negative chlamydia test results. The court found that Campbell's decision not to seek an adjournment effectively tied counsel's hands. The court also

found that counsel's decision at trial not to introduce Z.F.'s negative marijuana test results was a reasonable strategic decision. This appeal follows.

## DISCUSSION

¶11 A claim of ineffective assistance of counsel "must show that counsel's performance was deficient [in that] counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). To demonstrate deficient performance, a defendant must overcome a presumption that his or her counsel's actions fell within a wide range of professional conduct. *Id.* at 689. The claim must also show that "the deficient performance prejudiced the defense," that is, that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687. We need not address both elements of the ineffective assistance test if the defendant fails to make a sufficient showing on one of them. *See State v. Swinson*, 2003 WI App 45, ¶58, 261 Wis. 2d 633, 660 N.W.2d 12. Here, we do not need to address the question of prejudice because Campbell has failed to demonstrate that his trial counsel's performance was deficient.

¶12 Trial counsel testified that when he became aware of Z.F.'s test results he discussed the results with Campbell. Campbell informed counsel that he tested negative for chlamydia. Counsel testified that he recognized the potential relevance of Z.F.'s tests, along with Campbell's claim that he tested negative for the STD, and discussed seeking an adjournment to obtain Campbell's medical records and expert testimony. Campbell refused to agree to an adjournment. Campbell cannot now contend that counsel was ineffective for failing to present evidence of Campbell's negative test result and expert testimony about Z.F.'s marijuana test results when

Campbell himself refused to allow counsel the opportunity to obtain the necessary evidence.

¶13    As to trial counsel's decision not to question Z.F. directly about the test results, we agree with the postconviction court that counsel made a reasonable strategic decision not to pursue that line of questioning.  "A strategic trial decision rationally based on the facts and the law will not support a claim of ineffective assistance of counsel." *State v. Elm*, 201 Wis. 2d 452, 464-65, 549 N.W.2d 471 (Ct. App. 1996).  Counsel testified that he made a strategic decision not to question Z.F. about the test results at issue, telling the court, "I thought that the fact that she did not test positive [for marijuana] was of enough importance to start asking her about it … [but] it was going to be combined with the positive STD result for which at that point we did not have anything from Mr. Campbell.  It was an all or nothing." Counsel went on to explain that at that point, "[t]he nothing would be preferential," because counsel did not want the jury to assume that Z.F. obtained an STD from Campbell since counsel did not have Campbell's medical records to attempt to prove otherwise.  We will not second-guess counsel's tactical decision, which was based upon information available to counsel at the time.  *See id.* at 464.

¶14    Finally, we are not persuaded that a new trial is warranted in the interest of justice.  The main controversy—namely, whether Campbell sexually assaulted Z.F. and exposed her to harmful materials—was fully tried.

¶15    For the foregoing reasons, we affirm.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published.  *See* WIS. STAT. RULE 809.23(1)(b)5. (2017-18).

6